**STEVEN A. BRODY**
SBN 271616
**LAW OFFICES OF STEVEN A. BRODY**
350 S. Figueroa St., Suite 975
Los Angeles, CA 90071
T: 213-290-5294
F: 213-403-5323
stevebrodylaw@gmail.com

Attorney for Defendant

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No.: **13-cr-00392-BRO** |
| Plaintiff, | **NOTICE OF MOTION; MOTION TO SUPPRESS EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; EXHIBITS.** |
| vs. | |
| **PAULO LARA**, | Date:   November 4, 2013
Time: 9:00 A.M. |
| Defendant. | |

**TO: THE HON. BEVERLY R. O'CONNELL AND THE UNITED STATES ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that on the date and at the time above, or as soon thereafter as counsel may be heard, Defendant Paulo Lara will move, by and through his attorney, Steven A. Brody, to suppress evidence obtained as the result of an illegal search of his cellular phone.

The motion will be made pursuant to Rules 12(b)(3)(C) & 41(h) of the Federal Rules of

1 Criminal Procedure and on the ground that the search was without valid consent or applicable
2 exception to the warrant requirement.
3        The motion will be based on this notice of motion, on the attached declaration(s), on the
4 memorandum of points and authorities served and filed herewith, on such supplemental
5 declarations, affidavits, or memoranda of points and authorities as may hereafter be filed with
6 the court, on all the papers and records on file in this action, and on such oral and documentary
7 evidence as may be presented at the hearing of the motion.
8
9 DATED: September 24, 2013
10
11                                          /s/_____
12                                          STEVEN BRODY
                                            Attorney for Defendant
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Defendant's Motion to Suppress Evidence**

13-cr-00392-BRO

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS

## STATEMENT OF FACTS[1]

On October 3, 2012, Deputy Probation Officer Jennifer Fix of the Orange County Probation Department conducted an unannounced visit along with other officers at the home of defendant Paulo Lara, in Fullerton, California. Mr. Lara was on probation at the time. One of the conditions of Mr. Lara's state probation was that he submit his "person and property including any residence, premises, container, or vehicle under your control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer with or without a warrant, probable cause or reasonable suspicion." See *Lara* Conditions of Probation, attached hereto as Exhibit A. Officers entered the residence and told Mr. Lara to sit down on the couch. One of the officers picked up Mr. Lara's cell phone which was sitting on the coffee table and began browsing through the text messages and photographs on the phone. Among the text messages was one sent from Mr. Lara's cell phone the previous afternoon, which included three pictures of a semiautomatic handgun. The pictures were sent to a recipient identified as "Al" who responded in Spanish asking if the gun was "clean." Mr. Lara responded with a text saying "yup." Al then texted in Spanish, "What is the lowest you will take for it?" and asked in another text, "How much?" Mr. Lara never responded to either of these messages.

Mr. Lara's vehicle was searched and a folding knife was found in the driver's side door. Mr. Lara was arrested. After his arrest, the contents of the phone were downloaded onto a disc by the Orange County Task Force Crime Lab.

GPS coordinates obtained from the phone and associated with the pictures of the gun indicated that the photos had been taken near a residence in Long Beach where Mr. Lara had previously lived and which belongs to his parents. Police went to the residence, obtained consent to search from Rosa Lara, Mr. Lara's mother, and found the gun, a 9mm handgun, in

---

[1] The statement of facts is taken in part from discovery provided to the defense by the United States Attorney's Office. Recitation of those facts herein is not an admission by defendant of their truth.

1    one of the rooms of the house. The gun appeared to match the photographs.

2         At the time of the incident, Mr. Lara was on probation for violating California Health

3    and Safety Code sections 11378 and 11379(a). Following a contested revocation hearing held

4    on April 10, 2013, Mr. Lara was sentenced to serve two years in state custody, with credit for

5    386 days already served.

6         On May 30, 2013, a grand jury returned an indictment charging Mr. Lara with violating

7    18 U.S.C. 922(g)(1)—felon in possession of a firearm and ammunition.

8         This motion follows.

9

10                                   **ARGUMENT**

11   **ALL EVIDENCE OBTAINED AS A RESULT OF THE WARRANTLESS**

12   **SEARCH OF MR. LARA'S CELL PHONE MUST BE SUPPRESSED BECAUSE**
     **NO EXCEPTION TO THE WARRANT REQUIREMENT APPLIED.**

13

14   **A. Introduction**

15        Mr. Lara challenges the search of his cellular telephone on the ground that it was

16   without warrant or reasonable suspicion and no exception to these requirements obtained at the

17   time of the search. Mr. Lara did not consent to the search. In addition, though Mr. Lara was

18   subject to a suspicionless search term as a condition of probation, the search of his cellular

19   telephone exceeded the scope of any consent he may have given as part of that agreement.

20   This is because the nature of modern phones is that they may contain extensive personal

21   information, thoughts, communications, and information concerning the user's location, that

22   California courts have not recognized as subject to the standard search condition of probation

23   and which no reasonable party to the agreement could have understood to be included in that

24   condition. As a result, Mr. Lara did not consent to the search either at the time it was

25   conducted or at the time he accepted the search condition of his probation.

26        Because Mr. Lara did not consent to the search of his phone, the intrusion into his

27   privacy must be subject to the "reasonable expectation of privacy" standard according to

28

                                          4

which searches and seizures are analyzed under the Fourth Amendment. Such expectations, even of individuals on probation, have been recognized by the Supreme Court and by the Ninth Circuit. The district court must therefore weigh the intrusion on any reasonable expectation of privacy that society is prepared to recognize as legitimate, against the interests of the government in performing the search without cause. The search of a cellular telephone represents a profound intrusion into the privacy of a defendant, whether on probation or parole, and one that cannot be justified in this case.

**B.  The search was not valid under the conditions of Mr. Lara's probation.**

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. Amend. IV. A warrantless search is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted). The government bears the burden of establishing that a warrantless search was reasonable, i.e., that it falls within an exception and was conducted reasonably, and did not violate the Fourth Amendment. *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992) (citations omitted).

The government may argue that the search of the cell phone was consented to by Mr. Lara when he accepted the terms and conditions of his probation, which included a standard search condition imposed in California. Mr. Lara was subject to such a condition, but the search of his cell phone was nonetheless invalid because (1) it exceeded the scope of the condition that was agreed upon—and therefore the advance consent given—by Mr. Lara in accepting the terms and conditions of probation, and (2) the search violated the Fourth Amendment because it intruded on the reasonable privacy expectations of a Mr. Lara in spite of his status as a probationer and this intrusion cannot be justified by a substantial government interest.

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.  The search exceeded the scope of the condition of probation agreed upon by the court and Mr. Lara.**

The terms of Mr. Lara's probation included the following condition: "Submit your person and property including any residence, premises, container, or vehicle under your control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer with or without a warrant, probable cause or reasonable suspicion." *See* Lara Conditions of Probation, attached hereto as Exhibit A.

California courts often impose this waiver as a condition of probation. However, case law makes clear that such a condition is not understood to be without limits. First, California courts do not have unlimited discretion when imposing conditions of probation. *People v. Carbajal*, 10 Cal.4th 1114, 1120 (Cal. 1995). Under California law, a condition of probation must be " 'reasonably related to the crime of which the defendant was convicted or to future criminality.' " *Id.* "Generally, [a] condition of probation [is invalid if] it (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . . " *People v. Olguin*, 45 Cal.4th 375, 379, (Cal. 2008) (internal citations and quotation marks omitted). Accordingly, courts must fashion probation conditions carefully, and the suspicionless search of a probationer's computer has been stricken where the *Olguin* factors are not satisfied. *See People v. Lopez*, 2011 WL 1167118 at *5 (Cal. Ct. App. 2011, unpublished).

In *Lopez*, the appellate court struck a condition of probation that gave consent to search "[a]ny location where his/her data is stored, including networks and off-site servers [and t]hat he/she must supply any password or pass phrase to unlock or remove encryption from any file, system, computer, or data of any type." *Id. Lopez* reasoned that there was "no rational factual basis from which we could project the possibility that Lopez will commit computer crime in the future." *Id.* at *5. *See also People v. Garcia*, 2011 WL 141121 (Cal. Ct. App. 2011, unpublished) (affirming condition that probationer disclose email accounts and submit to

**Defendant's Motion to Suppress Evidence**

1   warrantless search of computer accounts, because condition was reasonably connected to child

2   molestation conviction); *People v. Alvarado*, 2004 WL 1900529 at *1 (Cal. Ct. App. 2004,

3   unpublished). In *Alvarado*, the appellate court found that a suspicionless search condition

4   imposed following an assault conviction was "constitutionally overbroad because it permits

5   the search of appellant's property where neither drugs or alcohol could be found, e.g.,

6   computers, computer data, bank records, financial records, etc." *Id.*

7          Because courts must be careful to choose appropriate conditions of probation, the case

8   law is replete with examples of courts imposing a specific condition permitting the search of

9   digital media such as computers. *See Lopez*, *supra*, 2011 WL 1167118; *Garcia*, *supra*, 2011

10   WL 141121; *People v. Realmuto*, 2010 WL 3221963, at *5 (Cal Ct. App. 2010, unpublished);

11   *In re Stevens*, 119 Cal.App.4th 1228, 1231 (Cal. Ct. App. 2004); *In re Victor L.*, 182

12   Cal.App.4th 902, 923-927 (Cal. Ct. App. 2010); *In re Hudson*, 143 Cal.App.4th 1, 11 (Cal. Ct.

13   App. 2006); *see also People v. Lord*, 2009 WL 2244172 at *1 (Cal. Ct. App. 2009,

14   unpublished) (referencing condition that defendant submit "person, vehicle, residence,

15   property, personal effects, *computers and recordable media* . . . to search at any time with or

16   without a warrant, and with or without reasonable cause . . . .") (emphasis added); *People v.

17   Ramirez*, 2009 WL 2197070 at *1 (same condition). Indeed, it makes sense that the contents of

18   computers are treated differently from tangible property. "[A]nalogizing computers to other

19   physical objects when applying Fourth Amendment law is not an exact fit because computers

20   hold so much personal and sensitive information touching on many private aspects of life....

21   [T]here is a far greater potential for the 'inter-mingling' of documents and a consequent

22   invasion of privacy when police execute a search for evidence on a computer." *United States

23   v. Lucas*, 640 F.3d 168, 178 (6th Cir. 2011).

24          That a modern mobile phone is a "recordable medium" akin to a computer is obvious.

25   Text messages and digital photographs are the subject of this suppression motion and very

26   similar to the forms of communication that are managed and employed by computers. *See

27   United States v. Park*, 2007 WL 1521573, at *8 (N.D. Cal. May 23, 2007, unpublished)

28

**Defendant's Motion to Suppress Evidence**

13-cr-00392-BRO

1   ("[M]odern cell phones record incoming and outgoing calls and can also contain address

2   books, calendars, pictures.  Individuals can store highly personal information on their cell

3   phones and can record their most private thoughts . . . ." ) Government-based publications, too,

4   acknowledge this similarity. "Smartphones, or mobile phones with advanced capabilities like

5   those of personal computers (PCs), are appearing in more people's pockets, purses, and

6   briefcase." Paul Riggiero & Jon Foote, United States Computer Emergency Readiness Team,

7   U.S. Dep't of Homeland Security, Cyber Threats to Mobile Phones, available at

8   http://www.us-cert.gov/reading_room/cyber_threats_to_mobile_phones.pdf (last visited

9   September 9, 2013).

10        The unusual nature of digital media and the fact that California courts routinely impose

11   express search conditions for such media makes clear that the standard search condition is not

12   typically understood to extend to these devices. This is critical, because the conditions of

13   probation represent an agreement between the court and the defendant. *See People v. Rubics*,

14   136 Cal.App.4th 452, 459 (Cal. Ct. App. 2006) ("[I]f the defendant feels that the terms of

15   probation are harsher than the sentence for the substantive offense[,] he is free to refuse

16   probation.")(internal quotations marks omitted); *see also Pelland v. Rhode Island*, 317

17   F.Supp.2d 86, 94 (D.R.I. 2004) ("Probation is a type of contract: the state foregoes a period of

18   incarceration in consideration for the probationer's agreement to abide by court-imposed

19   conditions that are less confining than prison.") Thus, the scope of the agreement, and

20   therefore of the condition, is determined by the intentions of the parties.

21        Here, the intentions of the parties can be readily inferred from the regular practice of

22   California courts described above. In particular, it is clear that the absence of a condition

23   specifically authorizing suspicionless searches of digital media such as a cell phone, means

24   that Mr. Lara was not subject to such a condition. Moreover, Mr. Lara himself did not

25   understand the search condition to include his cell phone. *See* Lara Declaration, attached

26   hereto as Exhibit B. Thus, the search cannot be justified on the ground that Mr. Lara consented

27   to it in advance. Nor did Mr. Lara consent to the search at the time it took place. *Id*. Thus, the

28

consent exception to the warrant requirement does not apply to the search of the cell phone.

Finally, Mr. Lara notes that even if this Court should find the search of the cell phone for text messages and pictures within the scope of his probation terms, the taking of GPS data from the device to learn the location of the gun was certainly outside of this scope. Nothing in California case law suggests that the police have the right under the standard probation search condition to access information concerning the probationer's every movement from his cell phone. Such information has long been understood to be held private. *United States v. Karo*, 468 U.S. 705 (1984). In *Karo*, the Court concluded that the warrantless "monitoring of a beeper in a private residence, a location not open to visual surveillance, violates the Fourth Amendment rights of those who have a justifiable interest in the privacy of the residence." *Id.* at 714. Police and probation were not entitled to access information on Mr. Lara's movements that were stored on the device. No reasonable person could believe that the terms of Mr. Lara's probation – which did not include GPS monitoring – would have permitted access to such information. Any evidence that was obtained as a result of the improper accessing of this information is therefore "fruit of the poisonous tree" and must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

**2.  The search of text messages and photographs violated the Fourth Amendment because it intruded on Mr. Lara's reasonable expectations of privacy in his cell phone, and therefore all evidence derived from that violation is fruit of the poisonous tree.**

Because, as agued above, there was no consent to the search, this Court must determine whether the search violated Mr. Lara's Fourth Amendment rights, by applying a standard reasonableness analysis. See *Samson v. California*, 547 U.S. 843, 848 (2006); *United States v. King*, 711 F.3d 986, 989-990 (9th Cir. 2013).  In particular, "[w]hether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson*, 547 U.S at 848 (internal citations omitted).

The Supreme Court has examined searched conducted on probationers and parolees

**Defendant's Motion to Suppress Evidence**

1    exception in three important cases: *Griffin v. Wisconsin*, 483 U.S. 868 (1987); *United States v.*
2    *Knights*, 534 U.S. 112 (2001); and *Samson*, *supra*. Both *Griffin* and *Knights* dealt with people
3    on state probation, and *Samson* dealt with a person on parole. These cases have held that
4    probationers and parolees have diminished expectations of privacy than a person not under
5    supervision, because they are on a "continuum of state-imposed punishments." See *Samson*,
6    547 U.S. at 850 (internal citations omitted). However, on this continuum, a probationer's
7    rights under California law exceed those of a parolee. *King*, *supra*, 711 F.3d at 988-989. This
8    proposition was affirmed again recently in *King*: "'parolees have fewer expectations of privacy
9    than privacy than probationers, because parole is more akin to imprisonment than probation is
10   to imprisonment.'" *Id.* (citing *Samson*, at 850); see also *United States v. Cardona*, 903 F.2d
11   60, 63 (1st Cir. 1990) ("[O]n the Court's continuum of possible punishments, parole is the
12   stronger medicine; ergo, parolees enjoy even less of the average citizen's absolute liberty than
13   do probationers.") (citations and internal quotation marks omitted).

14        Moreover, "restrictions on a parolee's liberty are not unqualified." *Id.* at 850 fn 1. And,
15   the law does not "equate parolees with prisoners for the purpose of concluding that parolees,
16   like prisoners, have no Fourth Amendment rights." *Samson*, 547 US. at 850 fn 2; s*ee also*
17   *Griffin*, 483 U.S. at 875 (holding that supervision is a special need of the state that "permit[s] a
18   degree of infringement upon privacy that would not be constitutional if applied to the public at
19   large. That permissible degree is not unlimited, however[.]") In short, the scope of
20   infringement upon the rights of a parolee is not unlimited, and the rights of a probationer are
21   greater than those of a parolee.

22        At issue in *King* was whether law enforcement properly searched the home of a
23   probationer suspected of involvement in a homicide. *King*, 711 F.3d at 988. The officers
24   searched defendant's home and found a shotgun under his bed. *Id.* The Ninth Circuit held that
25   the warrantless search condition of appellant's probation permitted the search because the
26   intrusion on his privacy was only "slight" when weighed against the government's interest in
27   (1) preventing violations of the law, (2) "discovering criminal activity and preventing the

28

1    destruction of evidence," and (3) assuring "probationer's successful completion of probation
2    and in his or her reintegration into society." *Id*. at 990-991.

3        *King* articulated it's holding broadly, stating, "We hold only that a suspicionless search,
4    conducted pursuant to a suspicionless-search condition of a probationer's probation
5    agreement, does not violate the Fourth Amendment." *Id*. at 991. However, the holding was not
6    without limits. In particular, the court emphasized that it does not "condone searches that are
7    conducted for illegitimate reasons." *Id*.  Moreover, as noted earlier, *King* cited controlling
8    authority in *Samson* that parolees (and, a fortiori, probationers) have Fourth Amendment
9    rights, and that the state's ability to infringe upon those rights is not unlimited. *Samson*, 547
10   US. at 850 fn 2; *Griffin*, 483 U.S. at 875.

11       Thus, *King* must be read as confined to its facts. Specifically, the holding is that a
12   suspicionless-search condition justifies the suspicionless search of a probationer's home.
13   Where the facts are not comparable to those in *King*, the district court must do just as the *King*
14   court did:

15       In light of *Knights* and *Samson*, our task is to examine the totality of the
16       circumstances to determine whether the suspicionless search of Defendant's
         residence was reasonable. Id. at 848, 126 S.Ct. 2193. To do so, we must "
17       'assess[ ], on the one hand, the degree to which [the search] intrudes upon
18       [Defendant's] privacy and, on the other, the degree to which it is needed for the
         promotion of legitimate governmental interests.' "

19   *King*, 711 F.3d at 989-990 (internal citations omitted). That same analysis is warranted here.

20       As noted in the Section B1, *ante*, cell phones and computers perform much the same
21   functions in this day and age. Cell phones can be used for communications including email,
22   text messaging, and the transmission of digital photographs. To suggest that a probationer's
23   communications can be read without intruding on his reasonable expectation of privacy is
24   inconsistent with case law and common sense. The undersigned could find no case in which a
25   probationer's standard terms and conditions of probation included the right of the police or the
26   probation department to read a probationer's mail or to access his email accounts, for example.
27   The instant case represents exactly the same degree of intrusion. This is consistent with the
28

11
**Defendant's Motion to Suppress Evidence**

1    Supreme Court's holding that probationers do enjoy some Fourth Amendment protection, and

2    that such protection exceeds that accorded parolees. *Samson*, 547 US. at 850 fn 2; *Griffin*, 483

3    U.S. at 875. If parole is akin to imprisonment (see *King*, *supra*, 711 F.3d at 988-989), then it

4    may make sense that parolees could have their communications read as a matter of course. But

5    no such reasoning has been applied to probationers. Moreover, the fact that standard

6    conditions of probation have not been read to include computer and cell phone searches is a

7    strong indication of what society considers to be a reasonable degree of privacy for

8    probationers.

9         As the Supreme Court has recently observed, "Cell phone and text message

10   communications are so pervasive that some persons may consider them to be essential means

11   or necessary instruments for self-expression, even self-identification. That might strengthen

12   the case for an expectation of privacy." *City of Ontario v. Quon*, __ U.S. __ 130 S. Ct. 2619,

13   2630 (2010); see also *United States v. Finley*, 477 F.3d 250, 259–60 (5th Cir.2007*); United

14   States v. Davis*, 787 F.Supp.2d 1165 (Dist. Or. 2011) (A person has a reasonable expectation

15   of privacy in his or her personal cell phone, including call records and text messages). In

16   *Quon*, the Supreme Court addressed a situation in which a police officer's text messages sent

17   from his employer-provided phone could be searched without a warrant. Concluding that the

18   search was reasonable, the court held, "Quon's employer-provided pager was not nearly as

19   intrusive as a search of his personal e-mail account or pager, or a wiretap on his home phone

20   line, would have been. That the search did reveal intimate details of Quon's life does not make

21   it unreasonable, for under the circumstances a reasonable employer would not expect that such

22   a review would intrude on such matters." *Id*. at 2631; *see also United States v. Cotterman*, 709

23   F.3d 952, 957 (9th Cir.2013) (en banc) ("The papers we create and maintain not only in

24   physical but also in digital form reflect our most private thoughts and activities."); *United

25   States v. White*, --- F.3d ----, 2013 WL 2129119, at *6 (1st Cir. 2013) ("We suspect that the

26   eighty-five percent of Americans who own cell phones and "use the devices to do much more

27   than make phone calls," [citation], would have some difficulty with the government's view

28

**Defendant's Motion to Suppress Evidence**

1    that [the] cell phone was indistinguishable from other kinds of personal possessions, like a

2    cigarette package, wallet, pager, or address book, that fall within the search incident to arrest

3    exception to the Fourth Amendment's warrant requirement.")

4         *Davis* involved a criminal investigation in which a police officer answered the suspect's

5    cell phone and searched the phone for messages after he had been placed under arrest and was

6    being transported to the precinct for questioning. 787 F.Supp.2d at 1169. The defendant

7    brought a motion to suppress based on the warrantless search and seizure of his cell phone. *Id.*

8    at 1170. The court ultimately found that the search was unlawful and suppressed the evidence

9    discovered due to the illegal search. *Id*. at 1174. These cases plainly affirm the profound

10   expectation of privacy individuals have in their *personal* communications devices.

11        Against this intrusion must be weighed the government's interests. Yet here, there was

12   no substantial governmental interest that would have been harmed by obtaining a warrant

13   before searching the cell phone. The factors that made the warrantless searches reasonable in

14   *Griffin*, *Knights*, and *Samson* do not apply here because at the time of the search Mr. Lara was

15   already essentially in custody and the phone was in the exclusive control of the state. Mr. Lara

16   was not "at large" to harm the community as was a concern in *Griffin*. 483 U.S. at 875. There

17   was no need for the deterrent effect of an expeditious search, as was another issue in *Griffin*.

18   *Id*. at 876. There could not have been concern that Mr. Lara had a heightened incentive to

19   destroy evidence, as was addressed in *Knights*, because the cell phone was already in the

20   exclusive control of the probation officer when it was searched. 534 U.S. at 120. Merely

21   searching the phone to see if Mr. Lara was violating the law in some unknown way was

22   insufficient justification, as the investigation and prevention of crimes is not a special

23   governmental interest that can excuse the warrant requirement. *See United States v. Scott*, 450

24   F.3d 863, 870 (9th Cir. 2006) ("Crime prevention is a quintessential general law enforcement

25   purpose and therefore is the exact opposite of a special need.")

26        In sum, the intrusion into Mr. Lara's privacy of the cell phone search was profound and

27   unreasonable. The officer who picked it up on a whim and browsed the contents of Mr. Lara's

28

**Defendant's Motion to Suppress Evidence**

phone was engaged in an act no less intrusive than dropping by to read his mail, intercepting his electronic communications, or applying a wiretap to his phone. Society has not accepted such actions as legitimate and to find that Mr. Lara could not expect even this degree of privacy would be contrary to Supreme Court precedent. To eliminate this most basic kind of privacy right for a probationer would diminish his expectation of privacy to that of an incarcerated inmate, contrary to the holdings in *Griffin*, *Samson*, and *King*. The fruits of the search of the cell phone must therefore be suppressed as obtained in violation of the Fourth Amendment.

> **3.  The warrantless search to obtain GPS data, and therefore of the movements of Mr. Lara, was a violation of the Fourth Amendment and therefore all evidence flowing from that violation is fruit of the poisonous tree and must be suppressed.**

Not only did the police search the text messages and images on Mr. Lara's phone, they also collected global positioning data from the phone to determine where the photographs of the gun had been taken. Even if this court believes that the text messages and photographs were fair game for police and probation, accessing the GPS data on Mr. Lara's phone is an unacceptable intrusion on a probationer's reasonable expectation of privacy concerning the history of his movements on private property. As noted above, this information has long been understood to be held private. *United States v. Karo*, 468 U.S. 705 (1984). The California Court of Appeal has also recognized location data such as that obtained in this case, to be protected by the Fourth Amendment. In *People v. Xinos*, 121 Cal.Rptr.3d 496, 500-502 (Cal. Ct. App. 2011, unpublished), a defendant hit and killed a pedestrian while driving under the influence. Investigation established that the pedestrian was at fault and defendant pled to a DUI and leaving the scene of an accident. A year later, information from the car's Sensing and Diagnostic Module (SDM) was downloaded at the prosecutor's request, and the defendant was subsequently convicted of vehicular manslaughter on the basis of this information. *Id*. The court found, "This case is fundamentally distinguishable from the cases where technology is used to allow law enforcement to capture information that a person is knowingly exposing to the public." *Id*. at 508. Unlike a pen register, famously addressed in *Smith v. Maryland*, (1979)

442 U.S. 735, "exceedingly precise data [contained in the SDM] was not being exposed to the public or being conveyed to any other person." *Id*. at 509. Thus, concluded the court, the information was protected by the Fourth Amendment. *Id*. at 512.

The analysis here is the same. Mr. Lara's cell phone recorded data concerning his location at the time his phone was being used to take photographs. His location at these times was not conveyed to the general public. There was no requirement under the terms and conditions of his probation that he report all movements to the government. His expectation in privacy concerning his movements was thus a reasonable one, and that expectation was violated by the police when they obtained data on his movements from the phone. The competing government interest is no different here than described above. Any evidence that was obtained as a result of the improper accessing of this information is therefore "fruit of the poisonous tree" and must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

## C. The Search Was Not Valid Under The Search-Incident-To-Arrest Exception To The Warrant Requirement.

The government may argue that the search of the data in the cell phone was lawful as a search incident to arrest. The search was not lawful under the search-incident-to-arrest exception to the warrant requirement because this exception does not apply to searching the data held in cell phones. The search-incident-to-arrest exception allows law enforcement to conduct a warrantless search incident to a person's arrest in order to protect officers from weapons or other things that could be used against the officers by the arrested person, and to prevent the loss or destruction of evidence. See *Arizona v. Gant*, 556 U.S. 332, 338 (2009). However, [i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Id*. at 339. Thus, the search-incident-to-arrest exception may apply to seizing a cell phone from an arrestee's possession so that an arrestee does not smash the phone or use it as a weapon, but it cannot justify searching the

contents of a cell phone. As a rule, the search-incident-to-arrest exception should not apply to a search of the contents of a cell phone.

**D. If the Court Does Not Believe the Documentary Evidence is Sufficient Information from Which to Determine Whether Mr. Mezzo's Fourth Amendment Rights Were Violated, It Should Hold An Evidentiary Hearing to Obtain the Necessary Facts.**

Where a factual determination is required, courts are obligated by Federal Rule of Criminal Procedure 12 to make factual findings. *See United States v. Prieto-Villa*, 910 F.2d 601, 606-610 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" *id*. at 609-10 (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading. Accordingly, if the Court does not believe the documentary evidence and pleadings before it are sufficient to establish that Mr. Lara's Fourth Amendment rights were violated, Mr. Lara requests that this Court conduct an evidentiary hearing to determine, outside the presence of the jury, whether his rights were indeed violated.

Respectfully submitted.

DATED: September 24, 2013                    ___/s/_____

STEVEN A. BRODY

Attorney for Defendant

**PROOF OF SERVICE**

| | |
|---|---|
| UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA | Case No.:  **13-cr-00392-BRO** |

I am over the age of 18 and am not a party to this action; my business address is 350 S. Figueroa St., Suite 975 Los Angeles, CA 90071.

As of the date of this filing, I served the foregoing document via the Court's electronic filing service on the following interested parties:

UNITED STATES ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA

CLERK OF THE HONORABLE BEVERLY R. O'CONNELL

/s/
STEVEN A. BRODY