**STEVEN A. BRODY**
SBN 271616
**LAW OFFICES OF STEVEN A. BRODY**
350 S. Figueroa St., Suite 975
Los Angeles, CA 90071
T: 213-290-5294
F: 213-403-5323
stevebrodylaw@gmail.com

Attorney for Defendant

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>vs.<br><br>**PAULO LARA,**<br>Defendant. | Case No.: **13-cr-00392-BRO**<br><br>**NOTICE OF MOTION; *SECOND* MOTION TO SUPPRESS EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; EXHIBITS A, B, C.**<br><br>Date: November 4, 2013<br>Time: 9:00 A.M. |

**TO: THE HON. BEVERLY R. O'CONNELL AND THE UNITED STATES ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that on the date and at the time above, or as soon thereafter as counsel may be heard, Defendant Paulo Lara will move, by and through his attorney, Steven A. Brody, to suppress evidence obtained as the result of an illegal search of his mother's residence.

The motion will be made pursuant to Rules 12(b)(3)(C) & 41(h) of the Federal Rules of Criminal Procedure and on the ground that the authorities conducting the search did not have probable cause to believe that the residence was Mr. Lara's, and that any consent that was given to search the apartment was coerced by the government.

The motion will be based on this notice of motion, on the attached declaration(s), on the memorandum of points and authorities served and filed herewith, on such supplemental declarations, affidavits, or memoranda of points and authorities as may hereafter be filed with the court, on all the papers and records on file in this action, and on such oral and documentary evidence as may be presented at the hearing of the motion. It shall further incorporate by reference all declarations and exhibits previously submitted by Mr. Lara in support of his first motion to suppress evidence.

DATED: October 7, 2013

/s/______________________
STEVEN BRODY
Attorney for Defendant

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS**

**STATEMENT OF FACTS**[1]

On October 3, 2012, Deputy Probation Officer Jennifer Fix of the Orange County Probation Department conducted an unannounced visit along with other officers at the home of defendant Paulo Lara, in Fullerton, California. Mr. Lara was on probation at the time. One of the conditions of Mr. Lara's state probation was that he submit his "person and property including any residence, premises, container, or vehicle under your control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer with or without a warrant, probable cause or reasonable suspicion." See *Lara* Conditions of Probation, attached hereto as Exhibit A. Officers entered the residence and told Mr. Lara to sit down on the couch. One of the officers picked up Mr. Lara's cell phone which was sitting on the coffee table and began browsing through the text messages and photographs on the phone. Among the text messages was one sent from Mr. Lara's cell phone the previous afternoon, which included three pictures of a semiautomatic handgun. The pictures were sent to a recipient identified as "Al" who responded in Spanish asking if the gun was "clean." Mr. Lara responded with a text saying "yup." Al then texted in Spanish, "What is the lowest you will take for it?" and asked in another text, "How much?" Mr. Lara never responded to either of these messages.

Mr. Lara's vehicle was searched and a folding knife was found in the driver's side door. Mr. Lara was arrested. After his arrest, the contents of the phone were downloaded onto a disc by the Orange County Task Force Crime Lab.

GPS coordinates obtained from the phone and associated with the pictures of the gun indicated that the photos had been taken near a residence in Long Beach where Mr. Lara had previously lived and which belongs to his parents.

//

---

1 The statement of facts is taken in part from discovery provided to the defense by the United States Attorney's Office. Recitation of those facts herein is not an admission by defendant of their truth.

**A. The search of the residence**

The day after the search of Mr. Lara's residence, probation officers went to the residence of Mr. Lara's parents at 630 N Olive Ave. in Long Beach, California. Ms. Rosa Lara, defendant's mother opened the door to the probation officers. They told her that they were going to search the house. See First Declaration of Rosa Lara, attached hereto as Exhibit B. Ms. Lara told the officers that they could not search the house without a warrant. *Id*. She asked them repeatedly for a warrant and was repeatedly told by the officers that they did not need a warrant to search the house because the defendant was on probation. *Id*. The officers would not leave in spite of continued refusals by Ms. Lara to let them into the residence. Finally, believing that she had no choice and accepting the officers' assertion that they did not need a warrant, Ms. Lara allowed them to enter the residence. *Id*. Before officers entered the room in which the 9mm gun was found, Ms. Lara told the officers that that the room belonged to her husband, and that the two were separated, though living in the same house. *Id*. The gun was found in a vest hanging in the closet of Ms. Lara's husband's room.

At the time of the incident, Mr. Lara was on probation for violating California Health and Safety Code sections 11378 and 11379(a). Following a contested revocation hearing held on April 10, 2013, Mr. Lara was sentenced to serve two years in state custody, with credit for 386 days already served.

On May 30, 2013, a grand jury returned an indictment charging Mr. Lara with violating 18 U.S.C. 922(g)(1)—felon in possession of a firearm and ammunition. On September 24, 2013, Mr. Lara filed a motion to suppress evidence obtained from the illegal search of his cell phone.

This second motion to suppress evidence follows.

//

//

//

//

## ARGUMENT

### ALL EVIDENCE OBTAINED AS A RESULT OF THE WARRANTLESS SEARCH OF ROSA LARA'S RESIDENCE MUST BE SUPPRESSED BECAUSE THE OFFICERS LACKED PROBABLE CAUSE TO BELIEVE MR. LARA WAS RESIDING THERE AND ROSA LARA DID NOT GIVE VALID CONSENT TO THE SEARCH.

#### A. Officers Must Have Probable Cause To Believe A Residence Is That Of A Probationer Before They Can Search It Based Upon The Probationer's Search Condition.

The Ninth Circuit recently affirmed the long-standing rule that '[u]nder our precedents, a . . . condition [of a probation search] is that '[b]efore conducting a warrantless search' of a residence 'pursuant to a parolee's parole condition, law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched.'" *United States v. Grandberry*, --- F.3d ----, 2013 WL 5184439 at *3 (9th Cir. 2013), *citing United States v. Howard*, 447 F. 3d 1257, 1262 (9th Cir. 2006). In *Grandberry*, after police officers arrested the defendant, they decided to search a nearby apartment he had entered several times—at least six—in recent days. *Id.* at *1. The officers relied on the defendant's status as a parolee as their authority to search the apartment and so did not obtain a warrant. *Id.* Officers had seen Grandberry using keys to enter the apartment, and 'on some of the occasions on which the Officers observed Grandberry go into the building, they saw 'movement or activity through the window of [a] second-floor unit' just after Grandberry entered, and at least once they saw Grandberry 'looking out of the window of that apartment unit.'" *Id*. at *2. Officers took the keys and entered the apartment, where they found cocaine and a loaded gun. *Id*. at *3.

The Ninth Circuit affirmed the district court's granting of Grandberry's motion to suppress the fruits of the search. *Id*. at *13. In so doing, the court reiterated that while probable cause may not be required to search the residence of the probationer, <u>probable cause to believe that a residence is that of the probationer is required before the search may take place</u>. *Id*. at *11-12. This "probable-cause-as-to-residence requirement" was founded on the court's reasoning that "were we to permit a search of the apartment in violation of the *Motley*

requirement, we [would] risk diminishing the Fourth Amendment protections owed to the [actual] homeowner." *Id*. at *12, *citing Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir.2005) ( internal quotation marks and citations omitted).

In a concurring opinion, Justice Berzon noted that while the holding might appear at first blush to permit a paradoxical scenario in which the probationer has a greater expectation of privacy in someone else's residence other than his own, in fact, the rule derives from a policy of protecting the residences of those who are not on probation:

> California may have good reason to tie its own hands with regard to parole searches. The State has an interest protecting the privacy of its law-abiding citizens from intrusion on the basis of simple association with a parolee. To allow suspicionless searches of any residence in which a parolee is found threatens the privacy of family, friends, and others who advance the State's interest in "reintegrati[ng] parolees into productive society." *Samson v. California*, 547 U.S. 843, 854, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). Just as a "cooperative occupant's invitation adds nothing to . . . counter the force of an objecting individual's claim to security against the government's intrusion into his dwelling place," *Georgia v. Randolph*, 547 U.S. 103, 115, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), California has chosen not to allow the diminished privacy interest of one individual to undermine that of another.

*Id*. at *15 (Berzon, M., concurring).

**B. Officers Did Not Have Probable Cause To Believe That The Residence Was That Of Mr. Lara.**

Here, the probation officers who searched Rosa Lara's residence on October 4, 2012, did not have probable cause to believe that the Mr. Lara resided there. In fact, the officers who searched Rosa Lara's residence were the very probation officers who had previously searched what they *knew* to be Mr. Lara's current residence: "On October 3, 2012, at approximately 0610, I conducted an unannounced home call with Deputy Probation Officer Joseph Ortiz at the residence of probationer Paulo Lara: 1100 S. Magnolia, #16 in the city of Fullerton." *See* Probation Report, attached hereto as Exhibit A. Thus, not only did the probation officers lack probable cause to believe that Mr. Lara resided at the address, they knew quite well he did not. Moreover, Ms. Lara advised police that the room in which they found the 9mm handgun was

in her husband's room (and that the two had separate rooms as they were in the midst of a divorce) and certainly not defendant's. *See* Ex. B. Thus, there was not probable cause to believe that the residence or the bedroom searched belonged to Mr. Lara, and the search cannot not be justified as a probation search. *See Grandberry*, 2013 WL 5184439 at *11-12.

**C. Mr. Lara Has Standing to Contest the Search of the Home Because He Was a Frequent Guest in the Residence and Had a Reasonable Expectation of Privacy in the Residence.**

A defendant on parole or probation has standing to challenge the illegal search of another individual's residence if he has a reasonable expectation of privacy in that residence, even if he is subject to a warrantless search condition for his own residence. See *Grandberry*, 2013 WL 5184439 at *5; *Howard*, 447 F. 3d at 1261; *Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (in order to contest whether a search comports with the Fourth Amendment, the defendant must have a reasonable expectation of privacy in the location searched). It is well-established that an overnight guest has standing to contest a search of the residence in which he is staying. *Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990). However, it is not necessary that the guest spend the night to establish a reasonable expectation of privacy in the residence. See *Minnesota v. Carter*, 525 U.S. 83, 89 (1998). In *Carter*, the Court held that individuals in a business acquaintance's apartment for the first time to package cocaine for resale for two and one-half hours were not the equivalent of overnight guests and did not have a legitimate expectation of privacy in the apartment. The Supreme Court provided the following guidance:

> Respondents here were obviously not overnight guests, but were essentially present for a business transaction and were only in the home a matter of hours. There is no suggestion that they had a previous relationship with Thompson [the lessee], or that there was any other purpose to their visit. Nor was there anything similar to the overnight guest relationship in *Olson* to suggest a degree of acceptance into the household. While the apartment was a dwelling place for Thompson, it was for these respondents simply a place to do business.
> . . . .
>
> If we regard the overnight guest *in Minnesota v. Olson* as typifying those who may claim the protection of the Fourth Amendment in the home of another, and one merely legitimately on the premises as typifying those who may not do so, the

> present case is obviously somewhere in between. But the purely commercial nature of the transaction engaged in here, the relatively short period of time on the premises, and the lack of any previous connection between respondents and the householder, all lead us to conclude that respondents' situation is closer to that of one simply permitted on the premises. We therefore hold that any search which may have occurred did not violate their Fourth Amendment rights.

*Id*. at 90-91. Thus, it is the "connection between [the party asserting standing] and the householder", and "degree of acceptance into the household" that determine whether an individual has standing to contest a search. *Id*. *See also United States v. Padin*, 787 F.2d 1071, 1075-76 (6th Cir.) (whether defendant has a reasonable expectation of privacy depends on his subjective belief as well as (1) the defendant's interest in and control of the place searched, (2) any measures the defendant took to ensure privacy, and (3) whether society recognizes the defendant's expectation as reasonable).

Here, it is abundantly clear that Mr. Lara had a profound connection to the householder, his mother, and an unmitigated degree of acceptance into the household. *See* Second Declaration of Rosa Lara, attached hereto as Exhibit C. Mr. Lara spent much time at the home, was there from two to three times a week to eat, nap, bathe, and spend time with his family. *Id*. He had unlimited access to the house; he had his own set of keys; he kept may things there, including tools, clothing, and camping supplies. *Id*. He had, in short, the run of the house. That he had an expectation of privacy in the residence is thus apparent. Mr. Lara therefore has standing to contest the illegal search of the apartment.

**D. Any Consent Given To The Search By Rosa Lara Was Coerced And Involuntary.**

Although a warrantless search conducted pursuant to valid consent is constitutionally permissible, the government bears the burden of proving that such consent was given freely and voluntarily. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). The district court must xamine the totality of the circumstances to determine whether a person has given free and voluntary consent to conduct a search. *United States v. Perez–Lopez*, 348 F.3d 839, 846 (9th Cir. 2003); *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir.2 000). Criticaly, "[T] government's burden to show voluntariness 'cannot be discharged by showing no more than

acquiescence to a claim of lawful authority.'" *Perez-Lopez* at 846, (*citing Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968). In *Bumper*, a 66-year-old widow, who lived in a house located in a rural area at the end of an isolated mile-long dirt road, allowed four enforcement officials to search her home after they asserted they had a warrant to search the house. 391 U.S. at 550. The Ninth Circuit held the alleged consent to be invalid, noting that '[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Id*.

This case is indistinguishable from *Bumper*. Here, Ms. Lara advised officers when they came to search the residence that her son no longer resided there. *See* Declaration of Rosa Lara, attached hereto as Exhibit B. Rosa Lara told officers that they could not search the house without a warrant and that they could not come in. *See* Ex. B. Nonetheless, officers insisted repeatedly that they did not need a search warrant to conduct a search of the house because Mr. Lara was on probation and he had recently been in the house. *Id*, Ex. A. Officers insisted again and again until Ms. Lara felt she had no choice but to consent. *See* Ex. B. They simply would not leave until they had bullied Ms. Lara into letting them into the house. Thus, the probation officers insisted that Ms. Lara had "no right to resist the search," and Ms. Lara did nothing more than "acquiesce to a claim of lawful authority." *Perez–Lopez*, 348 F.3d at 846. Her consent was therefore involuntary and cannot justify the search.

In sum, Mr. Lara's probation condition did not allow for a search of the residence of Rosa Lara, because probation officers knew that it was not Mr. Lara's residence, and Ms. Rosa Lara's consent to search the apartment was mere acquiescence to officers' insistence that they had the right to search. The search was therefore invalid and all fruits thereof must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

//

//

//

**E. If the Court Does Not Believe the Documentary Evidence is Sufficient Information from Which to Determine Whether Mr. Lara's Fourth Amendment Rights Were Violated, It Should Hold An Evidentiary Hearing to Obtain the Necessary Facts.**

Where a factual determination is required, courts are obligated by Federal Rule of Criminal Procedure 12 to make factual findings. *See United States v. Prieto-Villa*, 910 F.2d 601, 606-610 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" *id*. at 609-10 (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading. Accordingly, if the Court does not believe the documentary evidence and pleadings before it are sufficient to establish that the search of Rosa Lara's residence was illegal, Mr. Lara requests that this Court conduct an evidentiary hearing to make that determination outside the presence of the jury.

Respectfully submitted.

DATED: October 7, 2013

___/s/_____________________
STEVEN A. BRODY
Attorney for Defendant

**PROOF OF SERVICE**

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

Case No.: **13-cr-00392-BRO**

I am over the age of 18 and am not a party to this action; my business address is350 S. Figueroa St., Suite 975 Los Angeles, CA 90071.

As of the date of this filing, I served the foregoing document via the Court's electronic filing service on the following interested parties:

UNITED STATES ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA

CLERK OF THE HONORABLE BEVERLY R. O'CONNELL

/s/
STEVEN A. BRODY