ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
RYAN H. WEINSTEIN (Cal. Bar No. 240405)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-8957
    Facsimile:  (213) 894-0141
    E-mail:    ryan.weinstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>PAULO LARA,<br><br>       Defendant. | No. CR 13-392-BRO<br><br>**GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANT'S MOTIONS TO SUPPRESS; EXHIBIT**<br><br>[Declaration of Probation Officers Jennifer Fix and Joseph Ortiz filed under separate cover]<br><br>Hearing Date: 11/4/2013<br>Hearing Time: 9:00 a.m. |

# TABLE OF CONTENTS

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION..................................................1

II.   FACTUAL BACKGROUND...........................................2

      A.    Defendant's Guilty Plea and Waiver of Rights............2

      B.    Defendant's Initial Interview with Probation...........4

      C.    The October 3, 2012 Probation Search...................4

      D.    The Forensic Examination of Defendant's Cell Phone Data..5

      E.    The October 4, 2012 Search of 6630 North Olive Avenue....6

III.  ARGUMENT.....................................................8

      A.    The Probation Officers' Search Of Defendant's Phone Was
            Lawful.................................................8

            1.    Defendant Knowingly and Voluntarily Waived His Fourth
                  Amendment Rights As Part of His Guilty Plea........8

            2.    The Probation Officers' Search of Defendant's Cell
                  Phone Was Within the Scope of Defendant's Search
                  Condition.........................................9

            3.    The Probation Search Was Reasonable Under The Fourth
                  Amendment.........................................11

                  a.    Any Intrusion Into Defendant's "Legitimate
                        Expectation of Privacy" Was Minimal..........14

                  b.    The Government's Substantial Interest In
                        Protecting The Public From Defendant's
                        Recidivism Outweighs Any Purported Intrusion..16

      B.    The Probation Officers' Search Of Defendant's Mother's
            Home Was Lawful........................................19

            1.    Defendant Had No Reasonable Expectation of Privacy in
                  Rosa Lara's House Because He Knowingly and
                  Voluntarily Waived His Fourth Amendment Rights.....19

            2.    Rosa Lara Consented To The Officers' Search........19

            3.    The Search of Rosa Lara's House Was Valid Under
                  Defendant's Probation Search Condition.............21

## **TABLE OF CONTENTS (CONTINUED)**

<u>DESCRIPTION</u>                                                                      <u>PAGE</u>

IV.  CONCLUSION.................................................24

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

Cases

<u>Case v. Kitsap Cnty. Sheriff's Dep't</u>,
    249 F.3d 921 (9th Cir. 2001)...................................26

<u>Griffin v. Wisconsin</u>,
    483 U.S. 868 (1987)...........................................20

<u>In re Hudson</u>,
    143 Cal. App. 4th 1 (2006)....................................10

<u>In re Victor L.</u>,
    182 Cal. App. 4th 902 (2010)..................................10

<u>People v. Realmuto</u>,
    2010 WL 3221963 (Cal. Ct. App. Aug. 17, 2010).................10

<u>Samson v. California</u>,
    547 U.S. 843 (2006)...............................13, 15, 21, 24

<u>Schneckloth v. Bustamonte</u>,
    412 U.S. 218 (1973)..............................8, 22, 23, 24

<u>United States v. Arnold</u>,
    533 F.3d 1003 (9th Cir. 2008).................................11

<u>United States v. Blood</u>,
    429 F. App'x 670 (9th Cir. 2011)..........................11, 18

<u>United States v. Brown</u>,
    563 F.3d 410 (9th Cir. 2009)..............................22, 23

<u>United States v. Cannon</u>,
    29 F.3d 472 (9th Cir. 1994)...................................12

<u>United States v. Cormier</u>,
    220 F.3d 1103 (9th Cir. 2000)..................................8

<u>United States v. Davis</u>,
    CRIM. 10-339-HA, 2011 WL 2036463 (D. Or. May 24, 2011)........17

<u>United States v. Diaz</u>,
    CR 05-0167 WHA, 2006 WL 3193770 (N.D. Cal. Nov. 2, 2006)......11

<u>United States v. Drayton</u>,
    536 U.S. 194 (2002)...........................................22

<u>United States v. Grandberry</u>,
    —- F.3d —-, (9th Cir. Sept. 17, 2013).................25, 26, 27

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

United States v. Howard,
   447 F.3d 1257 (9th Cir. 2006)...............................25, 26

United States v. Jones,
   286 F.3d 1146 (9th Cir. 2002)...............................23, 24

United States v. King,
   —- F. 3d. —-, 2013 WL 4516751 (9th Cir. Aug. 27, 2013).....passim

United States v. Knights,
   534 U.S. 112 (2001)........................................passim

United States v. Patayan Soriano,
   361 F.3d 494 (9th Cir. 2004)...................................23

United States v. Scott,
   450 F.3d 863 (9th Cir. 2006)...................................19

United States v. Skinner,
   3:06-CR-100, 2007 WL 1556596 (E.D. Tenn. May 24, 2007)........17

United States v. Vongxay,
   594 F.3d 1111 (9th Cir. 2010)..................................22

Statutes

18 U.S.C. § 922(g)(1)..............................................1

Cal. Civ. Code § 1638............................................11

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

On May 30, 2013, a federal grand jury charged defendant Paulo Lara ("defendant") with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  On July 25, 2012, defendant had pleaded guilty to two drug-trafficking felonies, crimes for which defendant received six days in jail and five years' probation. Months later, Orange County probation officers conducting a probation search found pictures of a semiautomatic handgun on defendant's mobile phone.  In text messages found on defendant's phone, defendant offered to sell the gun, assuring the prospective buyer that the gun was "clean."  Data on defendant's phone showed that defendant had taken the pictures at his mother's house.  Two days later, on October 4, 2012, probation officers found the loaded gun at defendant's mother's house, just as depicted on defendant's phone.

Defendant now moves to suppress all evidence in the case.  On September 24, 2013, defendant moved to suppress the evidence on his cell phone.  (Def.'s 1st Mot. to Suppress, Dkt. No. 27.)  On October, 7, 2013, defendant moved to suppress the gun found at his mother's house.  (Def.'s 2d Mot. to Suppress, Dkt. No. 30.) Collectively, defendant proffers four arguments:  (1) the search of defendant's phone exceeded the scope of his probation search condition, which required him to "[s]ubmit [his] person and property . . . to search and seizure at any time of the day or night . . . with or without a warrant, probable cause or reasonable suspicion" (Def.'s 1st Mot. to Suppress, at 6-9); (2) the probation search violated defendant's reasonable expectation of privacy in his

phone and the data stored on it (id. at 9-14); (3) the officers' search of his mother's home was unlawful because the officers lacked probable cause to believe defendant resided there (Def.'s 2d Mot. to Suppress, at 6); and (4) the officer's search of his mother's home was unlawful because the consent she provided was involuntary (id. at 8-9).

Each of defendant's arguments lack merit and should be rejected.  First, as part of his plea agreement, defendant voluntarily agreed to waive his "right to be free from unreasonable searches and seizures" while on probation and, in particular, agreed to submit his "person and property" to suspicionless, warrantless searches.  Defendant's waiver and broad search condition permitted his probation officers to search his cell phone and the data it contained.  Second, even if defendant had not voluntarily waived all Fourth Amendment rights, law enforcement's overriding interest in ensuring defendant's compliance with his probation terms and preventing his recidivism outweighs what little privacy interest defendant retained in his phone and its data.  Finally, the officers' search of the mother's home was permissible for two reasons:  (1) the mother's consent was voluntary and readily provided; and (2) the officers had probable cause to believe defendant occasionally lived with his parents based on information defendant himself had provided.  For all of these reasons, and as explained below, defendant's motions should be denied.

## II.   FACTUAL BACKGROUND

### A.   DEFENDANT'S GUILTY PLEA AND WAIVER OF RIGHTS

On July 25, 2012, defendant pleaded guilty to Possession of a Controlled Substance for Sale, and Sale or Transportation of a

2

Controlled Substance, in Orange County Superior Court. (Fix Decl. ¶ 2.) He was sentenced to six days in jail and five years' probation. (Id.) As part of his guilty plea, defendant signed and initialed a form entitled "Advisement and Waiver of Rights for a Felony Guilty Plea," which included the following waiver:

> "Fourth Amendment waiver: I understand under the Fourth and Fourteenth Amendments to the United States Constitution, I have a right to be free from unreasonable searches and seizures. I waive and give up this right, and further agree that for the period during which I am on probation or mandatory supervision, I will submit my person and property, including any residence, premises, container or vehicle under my control to search and seizure at any time of the day or night by any law enforcement officer, probation officer, post-release community supervisor, or parole officer, with or without a warrant, probable cause, or reasonable suspicion."

(Fix Decl. Ex. A, at 7.) Defendant further affirmed that: "I understand each and every one of the rights set forth above in this advisement and waiver of rights form. I waive and give up each of those rights in order to enter my guilty plea." (Id. Ex. A, at 12.) Defendant's attorney confirmed that he had explained to defendant "each of the rights set forth on the form." (Id.) The sentencing court then found that defendant had been advised regarding his constitutional rights and his waiver of those rights, and that defendant entered his guilty plea "with full understanding of the matters set forth . . . in the guilty plea form." (Ex. 1, 7/26/2012 Minute Order, at 1.)

In addition, defendant assented to the terms and conditions of probation attached to the felony plea form, including the condition requiring him to "[s]ubmit your person and property, including any residence, premises, container or vehicle, under your control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer or mandatory supervision officer, with or without a warrant, probable cause, or reasonable suspicion." (Fix Decl. Ex. A, at 10.)  Defendant initialed this term (id.) and signed at the bottom, affirming that he read and agreed to it (id. at 11).  Defendant later accepted that term and all other terms and conditions of probation in open court.  (Ex. 1, at 3.)

### B.   DEFENDANT'S INITIAL INTERVIEW WITH PROBATION

Following his conviction, defendant was assigned to Orange County Deputy Probation Officer ("DPO") Jennifer Fix.  On August 25, 2012, DPO Fix conducted an initial interview with defendant.  Per her protocol, DPO Fix explained defendant's probation conditions to defendant and, in particular, confirmed that defendant understood the term permitting officers to conduct suspicionless searches of his person and property.  (Fix Decl. ¶ 3.)  DPO Fix's files indicate that defendant had no questions.  (Id.)

### C.   THE OCTOBER 3, 2012 PROBATION SEARCH

Defendant failed to report for his first scheduled appointment on October 1, 2012.  (Fix Decl. ¶ 4.)  Two days later, on October 3, 2012, DPO Fix and her colleague, DPO Joseph Ortiz, made an announced visit to defendant's residence at 1100 South Magnolia in Fullerton.  (Id. ¶ 5.)  The purpose of the visit was two-fold:  to verify that defendant lived there and to ensure defendant was complying with his

probation terms.  (Id.)  Defendant opened the door and granted the
officers entry.  (Id. ¶ 6.)  DPO Fix told defendant that the
officers were there to conduct a probation search and verify his
residence.  (Id.)

While DPO Fix searched the apartment, DPO Ortiz noticed a cell
phone on a coffee table.  (Fix Decl. ¶ 8(a).)  DPO Ortiz asked
defendant if the cell phone belonged to him; defendant confirmed
that it did.  (Id.)  DPO Ortiz then examined the phone as defendant
observed from a nearby sofa.  (Id. ¶ 8(b).)  DPO Ortiz discovered
text messages on defendant's phone transmitting pictures of a
semiautomatic handgun to a recipient named "Al."  The messages
showed that defendant was offering to sell "Al" the gun:  defendant
assured "Al" that the gun was "clean," and "Al" asked defendant
"what is the lowest you will take for it?"  (Id.)  Defendant did not
object to DPO Ortiz's search, and never suggested that he thought
the search fell outside the scope of his probation search condition.
(Id.)

Concerned that the gun was somewhere in defendant's house, DPO
Ortiz handcuffed defendant.  DPOs Ortiz and Fix then searched for
the weapon (Fix Decl. ¶ 10), finding only a folding knife stashed in
defendant's car (id. ¶ 11).  The officers arrested defendant for
possessing the knife and failing to report, in violation of his
probation terms.  (Id.)

**D.   THE FORENSIC EXAMINATION OF DEFENDANT'S CELL PHONE DATA**

After the officers transported defendant to Orange County jail,
they took defendant's cell phone to the Orange County Task Force
Crime lab.  (Fix Decl. ¶ 12.)  There, data from defendant's phone
was downloaded to a disc, along with a report summarizing the

phone's contents.  (Id.)  The officers reviewed the report the next

day.  (Id. ¶ 13.)  The report showed that defendant had taken the

gun picures on October 2, 2012, the day before the officers'

unannounced visit.  (Id.)  The report also showed, based on GPS data

associated with the pictures, that defendant had taken the pictures

at 6630 Olive Avenue in Long Beach.  (Id.)

DPO Fix entered the address into COPLINK, a law enforcement

database.  (Fix Decl. ¶ 14.)  The database listed the 6630 Olive

Avenue address as the "home location" for defendant.  (Id. & Fix

Decl. Ex. B.)  The database entry further indicated that defendant

himself had provided the "6630 Olive Avenue" address as his home

address in a misdemeanor DUI case.  (Id. ¶ 15.)  Court records from

that case confirmed that defendant had provided his home address as

"6630 Olive Street, Long Beach, CA 90805-1338-USA." (Id. & Fix Decl.

Ex. C.)  Additional investigation revealed that the address belonged

to defendant's parents and that defendant's mother, Rosa Lara, ran a

licensed daycare center there.  (Id. ¶ 16.)

**E.   THE OCTOBER 4, 2012 SEARCH OF 6630 NORTH OLIVE AVENUE**

On October 4, 2012, the probation officers went to 6630 North

Olive Avenue in Long Beach intending to conduct a consent search.

(Fix Decl. ¶ 17; Ortiz Decl. ¶ 2.)  At the time, the officers did

not believe defendant's search term authorized them to search

defendant's mother's house.  (Id.)

The officers knocked on the door and a young woman answered.

(Ortiz Decl. ¶ 3.)  DPO Ortiz asked to speak to Rosa Lara, who came

to the door.  (Id.)  In Spanish, DPO Ortiz explained that he and DPO

Fix were probation officers assigned to her son.  (Id.)  DPO Ortiz

asked if he could speak to Ms. Lara on the front porch, and Ms. Lara

agreed.  (Id. ¶ 4.)  DPO Ortiz then showed Ms. Lara the pictures of the gun on defendant's phone and asked if she knew about a gun in her house.  She replied that she did not.  (Id.)  DPO Ortiz asked whether — for the safety of the children in Ms. Lara's care — the officers could search the house for the gun depicted in the photos.  (Id. ¶ 5.)  Ms. Lara verbally consented.  (Id.)  At no point did Ms. Lara demand to see a search warrant or tell the officers she did not want them to enter without a warrant.  (Id.)  Nor did DPO Ortiz or anyone else tell Ms. Lara that they had a right to search her home without a warrant.  (Id.)

After Ms. Lara allowed the officers to enter, DPO Ortiz asked Ms. Lara whether she recognized the bedding depicted in the background of the gun photos on defendant's phone.  (Ortiz Decl. ¶ 6.)  Ms. Lara did and led the officers to a southwest bedroom.  (Id.)  The bedding in the room in fact matched the pictures.  (Id.)

The officers then searched the bedroom.  DPO Ortiz found a semiautomatic handgun in an attached closet that matched the pictures on defendant's phone.  (Ortiz Decl. ¶ 8.)  The gun was loaded with 10 rounds of ammunition and was wrapped in a white towel with a green stripe that matched the towel appearing in the background of the pictures on defendant's phone.  (Id.)  The officers seized the gun.  (Id. ¶ 9.)  Ms. Lara thanked the officers for finding the gun and removing it from her home.  (Id.)

# III. ARGUMENT

## A. THE PROBATION OFFICERS' SEARCH OF DEFENDANT'S PHONE WAS LAWFUL

### 1. Defendant Knowingly and Voluntarily Waived His Fourth Amendment Rights As Part of His Guilty Plea

As a threshold matter, defendant waived his "right to be free from unreasonable searches and seizures" when he pleaded guilty to the underlying offense. Defendant therefore lacks standing to assert a Fourth Amendment challenge. "An individual may waive his Fourth Amendment rights by giving voluntary and intelligent consent to a warrantless search of his person, property, or premises." United States v. Cormier, 220 F.3d 1103, 1112 (9th Cir. 2000) (internal quotation marks omitted); Schneckloth v. Bustamonte, 412 U.S. 218, 235 (1973)(voluntary consent constitutes a waiver of Fourth Amendment rights). Whether consent is voluntary depends on the totality of the circumstances. Schneckloth, 412 U.S. at 227.

The circumstances here establish defendant's waiver as voluntary and intelligent. Before pleading guilty to the underlying felony, defendant signed an "Advisement and Waiver of Rights" form that included the following waiver: "I understand under the Fourth and Fourteenth Amendments to the United States Constitution, I have a right to be free from unreasonable searches and seizures. I waive and give up this right, . . . ."[1] (Fix Decl. Ex. A, at 7 (emphasis added).) Defendant initialed that waiver and affirmed that he

---

[1] Although probationers do not automatically "waive their Fourth Amendment rights" merely by "agreeing, as a condition of probation, to submit [their] person and property to search at any time," see United States v. Scott, 450 F.3d 863, 867 (9th Cir. 2006), defendant's waiver here was far broader because, among other things, it included an explicit waiver of the "right to be free from unreasonable searches and seizures." (Fix Decl. Ex. A at 7.)

understood "each and every one of the rights set forth" in the waiver form. (Id. at 12.) Defendant's counsel likewise affirmed that he had explained to defendant "each of the rights set forth on the form" and "agree[d] that this form may be received by the court as evidence of defendant's . . . voluntary, intelligent, knowing, and express waiver of the rights set forth on this form." (Id. at 12.) During the plea proceedings, the Orange County court concurred that defendant had made his guilty plea with "full understanding of all matters in the guilty plea form." (Ex. 1, at 3.) This Court should similarly find that defendant's waiver of "his right to be free from unreasonable searches and seizures" was voluntary and intelligent. That waiver should preclude defendant from challenging the probation officers' searches.

2.   The Probation Officers' Search of Defendant's Cell Phone Was Within the Scope of Defendant's Search Condition

Even setting aside defendant's broad Fourth Amendment waiver, defendant's search condition was sufficiently comprehensive to permit the probation officers to search defendant's phone. The search condition required defendant to "[s]ubmit your person and property, . . ., under your control, to search and seizure at any time of the day or night by any law enforcement officer, . . . with or without a warrant, probable cause, or reasonable suspicion." (Fix Decl. Ex. A, at 10.) Defendant does not dispute that his phone and data constituted "property" that was "under [his] control." Indeed, defendant admitted to DPO Ortiz that the phone belonged to him. (Fix Decl. ¶ 8(a).) And although defendant cites cases in which courts imposed computer-specific search conditions (see Def.'s 1st Mot. to Suppress, at 7), he cites no authority for the novel

9

proposition that a search condition covering "property . . . under your control" excludes cell phones.  See, e.g., People v. Realmuto, D055436, 2010 WL 3221963, at *5 (Cal. Ct. App. Aug. 17, 2010) (unpublished) (merely "assuming," for the sake of argument, "that the defendant's search waiver specifying computers does not automatically fall within the blanket search waiver that may permissibly be imposed on probationers") (cited by defendant).[2]

Defendant's suggestion that the "contents of computers are treated differently from tangible property" (see Def.'s 1st Mot. to Suppress at 6) also finds little support in the law.  In the Ninth Circuit, a "computer is entitled to the same Fourth Amendment protection as other closed containers and personal effects." United States v. Blood, 429 F. App'x 670, 671 (9th Cir. 2011) (citing United States v. Arnold, 533 F.3d 1003, 1009-10 (9th Cir. 2008)). For this reason, courts have upheld warrantless probation searches of cell phones.  See, e.g., United States v. Diaz, CR 05-0167 WHA, 2006 WL 3193770, at *2, 4 (N.D. Cal. Nov. 2, 2006)(in pre-King decision, finding that police officers' search of defendant's cell phone, including "information contained on the phone, "initial messages that appeared when the phone was turned on," and "names and phone numbers in the address book," was authorized because the defendant's probation "included a search condition").  Defendant's citation to a Sixth Circuit case, United States v. Lucas, 630 F.3d

---

[2] Defendant's other case citations are likewise inapposite.  In re Victor L., 182 Cal. App. 4th 902 (2010), does not address probation search conditions at all, but rather conditions that prohibited the probationer from possessing cell phones or using an "Internet-enabled computer."  Id. at 919-927.  Likewise, In re Hudson, 143 Cal. App. 4th 1, 11 (2006), deals with conditions that prohibited the parolee from possessing or having access to computers, not with the scope of probation search conditions.  Id. at 10.

168 (6th Cir. 2011), actually undercuts his argument:  Although the court noted that computers are not perfectly analogous to other personal objects, the court still found that the defendant's laptop fell within the scope of his general consent to search his residence.  Id. at 175-79.

Finally, defendant urges the Court to read the "property . . . under your control" language to exclude cell phones because "Mr. Lara himself did not understand that search condition to include his cell phone." (Def.'s 1st Mot. to Suppress at 8.) But defendant's claimed misunderstanding of his search condition is belied by the facts.  The search term had been explained to defendant by DPO Fix at his initial interview (Fix Decl. ¶ 3) and, before that, by defendant's lawyer (id. Ex. A, at 12).  In addition, although defendant watched DPO Ortiz search his phone, defendant never objected.  (Fix Decl. ¶ 8(b).)  See United States v. Cannon, 29 F.3d 472, 477 (9th Cir. 1994) ("Failure to object . . . is properly considered as an indication that the search was within the scope of the initial consent.")  In any event, defendant's subjective interpretation of the search condition is irrelevant because the search condition itself is "clear and explicit," and thus the language of the condition governs.  See Cal. Civ. Code § 1638.

       3.   The Probation Search Was Reasonable Under The Fourth Amendment

Even if defendant had not waived his Fourth Amendment rights entirely, the officers' search of defendant's phone was reasonable under with the Fourth Amendment.  The government's interests in ensuring defendant's compliance with his probation terms and in

preventing defendant's recidivism outweighed what little legitimate privacy expectations defendant retained in his phone.

A probation search is an exception to the general warrant requirement. United States v. Knights, 534 U.S. 112, 121 (2001). In Knights, the Supreme Court upheld a warrantless search conducted pursuant to the terms of a defendant's probation, which had authorized searches "with or without a search warrant, warrant of arrest or reasonable clause." 534 U.S. at 114. The Court held that the "the search . . . was reasonable under our general Fourth Amendment approach of examining the totality of the circumstances, with the probation search condition being a salient circumstance." Id. at 118. Applying the same analysis, the Supreme Court in Samson v. California, 547 U.S. 843 (2006), held that the "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." 547 U.S. at 857.

Relying on Knights and Samson, the Ninth Circuit in King recently addressed whether the Fourth Amendment also permits suspicionless searches of a probationer's residence. United States v. King, —- F. 3d. —-, 2013 WL 4516751 (9th Cir. Aug. 27, 2013). The Court held that the suspicionless search of the defendant's residence was reasonable under the Fourth Amendment. Id. at *4. As the Court explained, whether a suspicionless probation search is reasonable depends on the totality of the circumstances: "we must 'assess[], on the one hand, the degree to which [the search] intrudes upon [defendant's] privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests." Id. at *3 (quoting Knights, 534 U.S. at 119.)

In first weighing the defendant's privacy interests, the Ninth Circuit noted that the "[d]efendant's status as a probationer means that he begins with a lower expectation of privacy than is enjoyed by a citizen who is not subject to a criminal sanction." Id. at *3. "Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after a verdict, finding, or plea of guilty . . . . Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." Id. (quoting Knights, 534 U.S. at 119.) The Court also found the defendant's search condition to be a "salient circumstance" because, as in Knights, (1) the judge who sentenced the defendant to probation "determined that it was necessary to condition the probation on [his] acceptance of the search provision, (2) "[t]he probation order clearly expressed the search condition," (3) the "[defendant] was unambiguously informed of it," and (4) the defendant accepted the search condition. Id. (quoting Samson, 547 U.S. at 852). The Court further noted that both Samson and Knights found that "acceptance of a clear and unambiguous search condition 'significantly diminished [a defendant's] reasonable expectation of privacy.'" Id. (quoting Samson, 547 U.S. at 852) Thus, not only did the King probationer begin with a lower expectation of privacy, "but the probation search condition 'significantly diminished' that lower expectation of privacy." Id. The Court thus concluded that "the search conducted here intruded on [d]efendant's legitimate expectation of privacy only slightly." Id.

On the other hand, the King court found that the government's interests were "substantial." Id. at *4. Those interests included: (1) "apprehending violators of the criminal law, thereby protecting

potential victims" from probationers' recidivism"; (2) "discovering criminal activity and preventing the destruction of evidence"; and (3) "a probationer's successful completion of probation and in his or her reintegration into society." Id. "Balancing the slight intrusion on [d]efendant's expectation of privacy against the government's significant need to promote its legitimate governmental interests," the Court found the search reasonable. Id.

### a. Any Intrusion Into Defendant's "Legitimate Expectation of Privacy" Was Minimal

The Ninth Circuit's reasoning in King applies with equal force here. Like King, defendant is a probationer and thus begins with a "lower expectation of privacy" than the average citizen. See King, 2013 WL 4516751, at *3. Defendant also unambiguously agreed to a broad, suspicionless search condition requiring him to "submit [his] person and property, including any residence, premises, container or vehicle under my control to search and seizure at any time of the day or night by any law enforcement officer . . . with or without a warrant, probable cause, or reasonable suspicion." (Fix. Decl. Ex. A, at 10.) That broad search condition constitutes a "salient circumstance" in the totality-of-the-circumstances analysis. King, 2013 WL 4516751, at *3. Moreover, the felony plea form that defendant signed "clearly expressed the search condition." See id. Defendant was "unambiguously informed" of the search condition both by his lawyer (Fix Decl. Ex. A, at 13), by the sentencing court (Ex. 1, at 2), and by DPO Fix (Fix Decl. ¶ 3). Indeed, defendant himself affirmed that he had read and understood the search condition and the Fourth Amendment rights he had waived. (See Fix Decl. Ex. A, at 12.) Thus, under King, defendant's broad "probation search

condition 'significantly diminished'" his already "lower expectation of privacy."  2013 WL 4516751, at *3.

In addition, defendant's decision to subscribe to his cell service under a false name should further diminish any legitimate expectation of privacy he retained.  Subscriber records show defendant subscribed to the phone under a fictitious name, "Peter Lara." (Fix Decl. at 2, n.1 & Ex. D.)  "[A]lthough an individual may have a subjective expectation of privacy in property that is attached to a fictitious name, that is not a privacy interest that society recognizes as reasonable." United States v. Davis, No. 10-339-HA, 2011 WL 2036463, at *2 (D. Or. May 24, 2011). See also United States v. Suarez-Blanca, No. 1:07-CR-0023-MHS/AJB, 2008 WL 4200156, at *6-7 (N.D. Ga. Apr. 21, 2008) ("The subscriber name indicates that [the defendant] either was trying to distance himself from the cell phone or had no interest in the cell phone.  As such, the use of a fictitious name . . . indicates that [the defendant] does not have a privacy interest in the phones."); United States v. Skinner, 3:06-CR-100, 2007 WL 1556596, at *15 (E.D. Tenn. May 24, 2007) ("When a defendant uses a fictitious name as part of his criminal scheme, whether the defendant has 'standing' to assert a Fourth Amendment violation is questionable.").  Defendant used a cell phone subscribed under a false name to arrange the sale of a semiautomatic handgun, in violation of law.  Whatever privacy interest defendant had in the phone is not one "that society recognizes as reasonable." Davis, 2001 WL 20136463, at *2-3.

Defendant nonetheless insists that individuals have a "profound expectation of privacy . . . in their personal communications devices" (see Def.'s 1st Mot. to Dismiss, at 13), and that accessing

15

the GPS data on his phone constitutes an "unacceptable intrusion" (id. at 14).  But the cases defendant cites for the proposition are inapposite:  none address probation searches, let alone searches where the probationer had already agreed to "submit [his] person and property . . . to search and seizure at any time of the day or night . . . with or without a warrant, probable cause or reasonable suspicion."  Where, as here, a probationer has accepted a "clear and unambiguous" search condition, his already "lower expectation of privacy" is "significantly diminished."  King, 2013 WL 4516751, at *3.  And, in any event, digital devices are entitled to no greater or lesser Fourth Amendment protection than other personal effects.  See Blood, 429 F. App'x at 671.  Indeed, the Ninth Circuit has squarely rejected defendant's contention that special privacy rights inhere in computers.  See Arnold, 533 F.3d at 1008-10 (rejecting argument that "laptop computers are fundamentally different from traditional closed containers" for Fourth Amendment purposes).  Defendant had minimal, if any, legitimate expectation of privacy in the phone or the data it contained.

> b.  The Government's Substantial Interest In Protecting The Public From Defendant's Recidivism Outweighs Any Purported Intrusion

The Court must next balance defendant's minimal expectations of privacy against the government's interests.  See King, 2013 WL 4516751, at *3.  As in King, the government here has several legitimate interests that outweigh the slight intrusion.  First, the government has an interest in "apprehending violators of the criminal law, thereby protecting potential victims" from probationers' recidivism.  See Knights, 534 U.S. at 121.  Defendant is a probationer and thus "more likely than the ordinary citizen to

violate the law." Id.  Moreover, defendant is a convicted drug trafficker, and, as the officers knew, drug traffickers commonly use cell phones to perpetrate their crimes. (Fix Decl. ¶ 9.)  Indeed, for this reason, it is standard practice for probation officers to search the phones of probationers convicted of drug crimes. (Id.) The officers thus had a legitimate law enforcement interest in searching defendant's phone, especially so soon after defendant's conviction, and just two days after defendant failed to report to his first probation appointment. (See Fix Decl. ¶¶ 2, 4-5.)

Citing United States v. Scott, 450 F.3d 863, 870 (9th Cir. 2006), defendant argues that searching his phone to see if he was "violating the law in some unknown way was insufficient justification" for the officers' search. (Def.'s 1st Mot. to Suppress, at 13.)  But Scott articulates the "special needs" exception to the warrant requirement, which is inapplicable here. The government need not further a "special need" — beyond the need to ensure a probationer complies with his probation conditions — to justify a probation search.  See Griffin v. Wisconsin, 483 U.S. 868, 875 (1987).  Indeed, as the Ninth Circuit has now held, valid probation searches may be suspicionless.  King, 2013 WL 4516751, at *3.  So long as the government's legitimate interests in conducting the search outweighs the probationer's diminished expectations of privacy, the search is valid.  Id.

Second, the government has an interest in "discovering criminal activity and preventing the destruction of evidence." Id. Defendant's probationer status gives him "more incentive to conceal [his] criminal activities" because he knows he is subject to a warrantless search condition and faces revocation of his probation

and possible incarceration.  Id. (quoting Knights, 534 U.S. at 120).
In the officers' experience, probationers or their associates will
remotely "wipe" data from seized phones to prevent law enforcement
from detecting their criminal activity.  (Fix Decl. ¶ 12.)   The
government's legitimate interest in discovering that activity
justified the officers' prompt forensic analysis of data stored on
the phone.  Defendant insists that the probation officers should not
have been concerned about his incentive to destroy evidence because
his phone was already in their control.  (Def.'s 1st Mot. to
Suppress, at 13.)  But this argument ignores defendant's ability to
have digital evidence deleted remotely in order "conceal [his]
criminal activities."  (See Fix Decl. ¶ 12.)   The officer's search
and seizure permitted the officers' to preserve vital forensic
evidence.

Finally, the government -- and society -- have an interest in
defendant's "successful completion of probation and in
his . . . reintegration into society." King, 2013 WL 4516751, at *3
(quoting Knights, 534 U.S. at 121).  As King recognized, "a state's
ability to conduct suspicionless searches of
[probationers] . . . aids, rather than hinders, the reintegration of
[probationers] into productive society." Id. (quoting Samson, 547
U.S. at 854).  The officers' search here likewise furthered, rather
than hindered, that interest.  The search enabled the officers to
detect defendant's criminal activity at an early stage, shortly
after defendant had transmitted pictures of a semiautomatic weapon
to a prospective buyer.  (See Fix Decl. ¶¶ 8(a), 13.)  These
substantial interests outweigh the slight intrusion on any

legitimate expectation of privacy defendant retained in his phone
and the data he stored on it.

### B. THE PROBATION OFFICERS' SEARCH OF DEFENDANT'S MOTHER'S HOME WAS LAWFUL

#### 1. Defendant Had No Reasonable Expectation of Privacy in Rosa Lara's House Because He Knowingly and Voluntarily Waived His Fourth Amendment Rights

In his second motion, defendant challenges the officers' search
of his mother's house.  As an initial matter, this challenge should
fail because defendant voluntarily waived whatever privacy interest
he had Ms. Lara's house when he pleaded guilty to the underlying
felony.  (See Part III.A.1, supra.)  Upon advice of counsel,
defendant explicitly waived his "right to be free from unreasonable
searches and seizures" in a so-called "Fourth Amendment waiver" that
both defendant's lawyer and the sentencing court agreed was
"voluntary, intelligent, knowing and express." (See Fix Decl. Ex.
A.)  As a result, this Court should find that defendant lacks
standing to challenge the probation officers' search of Ms. Lara's
home.

#### 2. Rosa Lara Consented To The Officers' Search

The search of Ms. Lara's residence was also valid because Ms.
Lara consented to it.  A warrantless "search conducted pursuant to a
valid consent is constitutionally permissible." Schneckloth, 412
U.S., 222; see also United States v. Brown, 563 F.3d 410, 415 (9th
Cir. 2009) (same).  Officers may search without a warrant or even
reasonable suspicion if, under the totality of the circumstances,
consent has been provided voluntarily.  United States v. Drayton,
536 U.S. 194, 206-07 (2002).  Voluntary consent does not require
officers to have advised the suspect that her consent could be

refused.  Id.; see also United States v. Vongxay, 594 F.3d 1111, 1120 (9th Cir. 2010).  Nor are officers required to educate a suspect about the consequences of providing consent.  Schneckloth, 412 U.S. at 241.

The Ninth Circuit considers five factors in assessing whether consent was voluntary:  "(1) whether the [consenting individual] was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the [consenting individual] was notified that she had a right not to consent; and (5) whether the [consenting individual] had been told a search warrant could be obtained."  United States v. Jones, 286 F.3d 1146, 1152 (9th Cir. 2002).  These factors are not exclusive, nor is any one factor dispositive; rather, the factors are mere "guideposts."  United States v. Patayan Soriano, 361 F.3d 494, 502 (9th Cir. 2004).  Whether consent to search was voluntarily given is "to be determined from the totality of all the circumstances."  Brown, 563 F.3d at 415 (quoting Schneckloth, 412 U.S. at 227).

As the probation officers' declarations make clear, Ms. Lara consented voluntarily.  The officers arrived at Ms. Lara's house intending to seek Ms. Lara's consent; if Ms. Lara withheld consent, they were prepared to leave.  (Fix Decl. ¶ 17; Ortiz Decl. ¶ 2.)  While on Ms. Lara's front porch, DPO Ortiz showed pictures of the gun on defendant's phone, and asked Ms. Lara if she knew whether the gun was in her house.  (Ortiz Decl. ¶ 4.)  Ms. Lara replied that she did not.  (Id.)  Officer Ortiz then asked whether, for the safety of the children in her care, the officers could search her house for the gun.  (Id. ¶ 5.)  Ms. Lara then did what one would expect the owner of an on-site, child-daycare facility to do:  she readily

agreed to the search so the gun could be located and removed.  (See id.)

When DPO Oritz found the gun, Ms. Lara was understandably relieved, even grateful.  (Id. ¶ 9.)  Ms. Lara never demanded to see a search warrant; never told the officers that she did not want the officers to enter; and never asked the officers to leave.  (Id. ¶¶ 5-6.)  Nor did the officers tell Ms. Lara they did not need a warrant (id. ¶ 5); to the contrary, the officers believed they could not search without Ms. Lara's consent.  Finally, the officers did not have their guns drawn (id.); Ms. Lara was not in custody (and thus had no need to be Mirandized); and Ms. Lara was never told a search warrant could be obtained.  See Jones, 286 F.3d at 1152.  In view of the totality of the circumstances, the Court should find that Ms. Lara's consent was voluntarily given.

        3.    The Search of Rosa Lara's House Was Valid Under
              Defendant's Probation Search Condition

Even if Ms. Lara had not voluntary consented to the search, the search was still permissible under defendant's search condition.  In United States v. Grandberry, the Ninth Circuit explained "that police or parole officers may lawfully conduct searches of parolees or their residences without satisfying the Fourth Amendment's warrant requirement when certain conditions are met."  United States v. Grandberry, —- F.3d —-, 2013 WL 5184439 (9th Cir. Sept. 17, 2013).  One condition is that "the parolee is subject to a provision authorizing such warrantless searches."  Id. at *3.  The other is that "'[b]efore conducting a warrantless search'" of a residence 'pursuant to a parolees's parole condition, law enforcement must have probable cause to believe that the parolee is a resident of the

house to be searched.'" Id. (quoting United States v. Howard, 447
F.3d 1257, 1262 (9th Cir. 2006).)  Probable cause as to a residence
exists "if an officer of reasonable caution would believe, based on
the totality of the circumstances, that the parolee lives at a
particular residence." Id. at *6.

    The probation officers here had probable cause to believe that
defendant lived at least part of the time with his parents.  While
the Ninth Circuit stressed that "the ultimate question whether
probable cause exists is 'fact-intensive,' and cannot be answered by
cross-checking a list of factors," it identified a few "patterns"
that had "clearly emerged."  Id. at *7-8.  One such pattern was
where "the parolee himself identified the residence in question as
that of the parolee." Id. at *7 (quoting Howard, 447 F.3d at 1265.)
That "pattern" exists here.  After learning defendant had taken the
gun pictures at 6630 Olive Avenue, DPO Fix entered the address into
a law enforcement database.  (Fix Decl. ¶ 14.)  The database listed
the address as defendant's "home location," and further indicated
that defendant himself had provided 6630 Olive Avenue as his home
address.  (Id.)  DPO Fix was able to confirm this fact through court
records, which indicated that defendant had provided the address at
booking.  (See id. ¶ 15.)  DPO Fix also knew that the address
belonged to defendant's parents.  Thus, based on the totality of the
circumstances, the officers had probable cause to believe defendant
lived with his parents when not residing at his Fullerton address, a
fact Ms. Lara has now confirmed.  (See generally 2d Lara Decl.)

    Defendant's attempts to undercut the officers' probable cause
are unavailing.  Defendant first argues that the officers lacked
probable cause to believe defendant lived with his parents in Long

22

Beach because the officers had earlier found defendant at his
Fullerton address.  (See Def.'s 2d Mot. to Suppress, at 6.)  But as
the Ninth Circuit recently confirmed, "officers may have probable
cause that a [probationer] lives at 'more than one residence.'"
Grandberry, 2013 WL 5184439, at *9, n.8 (quoting Case v. Kitsap
Cnty. Sheriff's Dep't, 249 F.3d 921, 930 (9th Cir. 2001) (joining
Eighth Circuit in holding that, "for Fourth Amendment purposes, a
person can have more than one residence.")).  In this way, the facts
of Grandberry are distinguishable because "the Officers never
claimed that they believed Grandberry had multiple residences, only
that his reported address was likely 'a sham one, listed in order to
divert attention from his illegal activities.'"  Grandberry, 2013 WL
5184439, at *9, n.8.  Unlike in Grandberry, the officers here had
reason to believe that defendant lived in two locations.

     Defendant next argues that the officers lacked probable cause
to believe defendant lived with his parents because Ms. Lara told
the officers that the bedroom where they found the handgun belonged
to her husband.  (Id. at 7.)  But this argument ignores both that
(1) Ms. Lara "identified drawers in the hallway leading into the
bedroom as containing [defendant's] clothing and property" (Ortiz
Decl. ¶ 7); and that (2) the linens in the bedroom matched pictures
on a cell phone that belonged to defendant (id. ¶ 6).  Both facts
bolstered the officers' probable cause.

     In sum, the search of Ms. Lara's house was lawful both because
Ms. Lara consented to it, and because the probation officers had
probable cause to believe defendant occasionally lived with his
parents.  Defendant's second motion to suppress should therefore be
denied.

**IV.   CONCLUSION**

        For the foregoing reasons, the Court should deny defendant's motions to suppress (Dkt. Nos. 27 & 30).


Dated: October 11, 2013                Respectfully submitted,

                                       ANDRÉ BIROTTE JR.
                                       United States Attorney

                                       ROBERT E. DUGDALE
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                            /s/
                                       _____
                                       RYAN H. WEINSTEIN
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

# Exhibit 1

# SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE
## PROBATION DEPARTMENT MINUTE ORDER

**Case Number   12WF0497**

**People    Vs    Lara, Paulo**

| Docket Dt | Seq | Text |
|---|---|---|
| 07/25/2012 | | |
| | 1 | Hearing held on 07/25/2012 at 08:30:00 AM in Department W1 for Pre Trial. |
| | 2 | Judicial Officer: John S. Adams, Judge |
| | 3 | Clerk: R. Stamm |
| | 4 | Bailiff: T. Ha |
| | 5 | Court Reporter: Denise Fish |
| | 6 | People represented by Anna McIntire, Deputy District Attorney, present. |
| | 7 | Defendant present in Court with counsel Gaughan, Dennis, Retained Attorney. |
| | 8 | Defendant states true name and date of birth are correct as charged. |
| | 9 | Defendant's motion to WITHDRAW NOT GUILTY PLEA to count(s) 1, 2 granted. |
| | 10 | Court finds defendant intelligently and voluntarily waives legal and constitutional rights to jury trial, confront and examine witnesses, and to remain silent. |
| | 11 | Motion by People to dismiss all other allegations. |
| | 12 | Motion granted. |
| | 13 | Other allegation, sequence # 1 as to count # 2 deleted from case. |
| | 14 | Other allegation, sequence # 1 as to count # 1 deleted from case. |
| | 15 | To the Original Complaint defendant pleads GUILTY as to count(s) 1, 2. |
| | 16 | The defendant has been advised of constitutional rights, waivers and consequences in writing pursuant to the guilty plea form. The defendant makes the plea with a full understanding of all the matters set forth in the charging document and in the guilty plea form, that defendant has read, understood and personally initialed each item herein. Defendant understands that the signing and filing of the guilty plea form is conclusive evidence that defendant has pleaded GUILTY to the charges set forth. |
| | 17 | Defendant's written waiver of legal and constitutional rights for guilty plea received and ordered filed. |
| | 18 | Court finds factual basis and accepts plea. |
| | 19 | Defendant advised of the possible consequences of plea affecting deportation and citizenship. |
| | 20 | Defendant advised of maximum possible sentence. |
| | 21 | This constitutes a prior conviction. |
| | 22 | Defendant advised of consequences of violating probation and parole. |
| | 23 | Counsel joins in waivers, pleas, and admissions. |
| | 24 | Defendant waives arraignment for sentencing. |
| | 25 | Defendant requests immediate sentencing. |
| | 26 | Probation report waived. |
| | 27 | No legal cause why judgment should not be pronounced and defendant having Pled Guilty to count(s) 1, 2, Imposition of sentence is suspended and defendant is placed on 3 Year(s) FORMAL PROBATION on the following terms and conditions: |
| | 28 | Serve 6 Day(s)  Orange County Jail as to count(s) 1, 2. |
| | 29 | Credit for time served: 3 actual, 3 conduct, totaling 6 days pursuant to Day-for-day. |

Name: Lara, Paulo                                                          CASE#: 12WF0497

Page 1 of  3                          MINUTE ORDER            Report Date: 7/26/2012 7:54:31 AM

*This is a digital representation of the actual Minute Order of the Superior Court of the State of California, County of Orange*

Exhibit 1
Page 1

50

# SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE
## PROBATION DEPARTMENT MINUTE ORDER

| | |
|---|---|
| 30 | Pay mandatory state restitution fine of $240.00 pursuant to Penal Code 1202.4 or Penal Code 1202.4(b). |
| 31 | Pay $40.00 Court Operations Fee per convicted count pursuant to Penal Code 1465.8. |
| 32 | Pay Criminal Conviction Assessment Fee per convicted count of $30.00 per misdemeanor/felony and $35.00 per infraction pursuant to Government Code 70373 (a)(1). |
| 33 | All fees payable through the Probation Department. |
| 34 | Pay $240.00 Probation Revocation Restitution Fine pursuant to Penal Code 1202.44. Restitution fine stayed, to become effective only upon final revocation of probation. |
| 35 | Pay FINE of $1,500.00 plus penalty assessments as to count(s) 1, 2 payable through the Probation Department. |
| 36 | Pay $1,500.00 to the Victim Witness Emergency Fund as to count(s) 1, 2. |
| 37 | Register pursuant to Health & Safety Code 11590. |
| 38 | Defendant is required to complete a new financial disclosure form if money is still owing on a restitution order or fine 120 days before the scheduled release from probation. Defendant is required to file the form with the court at least 90 days before the scheduled release from probation. |
| 39 | Defendant to provide a state DNA sample and prints for the State DNA Database pursuant to PC 296 and PC 296.1 unless collection agency verifies in any available databases that the DNA sample has been previously collected. |
| 40 | Provide a state DNA sample and prints for the State DNA Database pursuant to Penal Code 296 and Penal Code 296.1 and a buccal sample, prints and photograph to the Orange County District Attorney for permanent retention, analysis and search within any law enforcement database(s) for only law enforcement purposes immediately or, if in custody, within 72 hours of release. |
| 41 | Use no unauthorized drugs, narcotics, or controlled substances and submit to drug or narcotic testing as directed by your probation or mandatory supervision officer, or any peace officer. |
| 42 | Submit your person and property including any residence, premises, container, or vehicle under your control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer with or without a warrant, probable cause or reasonable suspicion. |
| 43 | Cooperate with your probation or mandatory supervision officer in any plan for psychological, psychiatric, alcohol and/or drug treatment. |
| 44 | Seek training, schooling, or employment and maintain residence as approved by your probation officer. |
| 45 | Do not associate with persons known to you to be parolees, on post-release community supervision, convicted felons, users or sellers of illegal drugs, or otherwise disapproved of by probation or mandatory supervision. |
| 46 | Do not own, use, or possess any type of dangerous or deadly weapon, including any firearm or ammunition. |
| 47 | Defendant provided a copy of "Prohibited Persons Notice Form and Power of Attorney for Firearms and Disposal" pursuant to Penal Code 12021(d)(2). |
| 48 | Violate no law. |
| 49 | Obey all orders, rules, and regulations, and directives of the Court, Jail, and Probation. |
| 50 | Disclose terms and conditions of probation when asked by any law enforcement or probation officer. |

Name: Lara, Paulo                                                CASE#: 12WF0497

Page 2 of 3            MINUTE ORDER        Report Date: 7/26/2012 7:54:31 AM

*This is a digital representation of the actual Minute Order of the Superior Court of the State of California, County of Orange*

Exhibit 1
Page 2

51

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE
PROBATION DEPARTMENT MINUTE ORDER

| | |
|---|---|
| 51 | Pay cost of probation or mandatory supervision, according to ability to pay, as directed by your probation or mandatory supervision officer pursuant to Penal Code section 1203.1b. |
| 52 | Defendant accepts terms and conditions of probation. |
| 53 | All terms and conditions to be directed and monitored through the Probation Department. |
| 54 | Defendant to report to Probation Officer forthwith. |
| 55 | The Court grants request for booking fees. Request form filed. |
| 56 | Pay $235.00 booking fee to Orange County Sheriff's Department. |
| 57 | Court orders bail bond # A30-2130007 exonerated. |

Name: Lara, Paulo                                    CASE#: 12WF0497

Page 3 of  3              MINUTE ORDER       Report Date: 7/26/2012 7:54:31 AM

This is a digital representation of the actual Minute Order of the Superior Court of the State of California, County of Orange

Exhibit 1
Page 3

52