STEVEN A. BRODY
SBN 271616
**LAW OFFICES OF STEVEN A. BRODY**
350 S. Figueroa St., Suite 975
Los Angeles, CA 90071
T: 213-290-5294
F: 213-403-5323
stevebrodylaw@gmail.com

Attorney for Defendant

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>vs.<br><br>**PAULO LARA**,<br><br>    Defendant. | Case No.: **13-cr-00392-BRO**<br><br>**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE; EXHIBIT A.**<br><br>Date:   November 4, 2013<br>Time:   9:00 A.M. |

**TO: THE HON. BEVERLY R. O'CONNELL AND THE UNITED STATES ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

Defendant Paulo Lara, by and through his counsel, Steven A. Brody, hereby files his reply to the government's brief in opposition to his first and second motions to suppress evidence. The reply incorporates by reference all exhibits and declarations attached to the original motions and shall be based on the memorandum of points and authorities served and

filed herewith, on such supplemental declarations, affidavits, or memoranda of points and authorities as may hereafter be filed with the court, on all the papers and records on file in this action, and on such oral and documentary evidence as may be presented at the hearing of the motion.

DATED: October 17, 2013

/s/_____
STEVEN BRODY
Attorney for Defendant

# POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS

## BRIEF STATEMENT OF FACTS[1]

On October 3, 2012, Deputy Probation Officer Jennifer Fix of the Orange County Probation Department conducted an unannounced visit along with other officers at the home of defendant Paulo Lara, in Fullerton, California. Mr. Lara was on probation at the time. One of the conditions of Mr. Lara's state probation was that he submit his "person and property including any residence, premises, container, or vehicle under your control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer with or without a warrant, probable cause or reasonable suspicion." Officers entered the residence and directed Mr. Lara to sit down on the couch. One of the officers picked up Mr. Lara's cell phone which was sitting on the coffee table and began browsing through the text messages and photographs on the phone. Among the text messages was one sent from Mr. Lara's cell phone the previous afternoon, which included three pictures of a semiautomatic handgun. The pictures were sent to a recipient identified as "Al" who responded in Spanish asking if the gun was "clean." Mr. Lara responded with a text saying "yup." Al then texted in Spanish, "What is the lowest you will take for it?" and asked in another text, "How much?" Mr. Lara never responded to either of these messages.

Mr. Lara's vehicle was searched and a folding knife was found in the driver's side door. Mr. Lara was arrested. After his arrest, the contents of the phone were downloaded onto a disc by the Orange County Task Force Crime Lab.

GPS coordinates obtained from the phone and associated with the pictures of the gun indicated that the photos had been taken near a residence in Long Beach where Mr. Lara had previously lived and which belongs to his parents.

//

//

---

[1] The statement of facts is taken in part from discovery provided to the defense by the United States Attorney's Office. Recitation of those facts herein is not an admission by defendant of their truth.

### A. The search of the residence

The day after the search of Mr. Lara's residence, probation officers went to the residence of Mr. Lara's parents at 630 N Olive Ave. in Long Beach, California. Ms. Rosa Lara, defendant's mother opened the door to the probation officers. They told her that they were going to search the house. See First Declaration of Rosa Lara, attached to Mr. Lara's Second Motion to Suppress, as Exhibit B. Ms. Lara told the officers that they could not search the house without a warrant. *Id*. She asked them repeatedly for a warrant and was repeatedly told by the officers that they did not need a warrant to search the house because the defendant was on probation. *Id*. The officers would not leave in spite of continued refusals by Ms. Lara to let them into the residence. Finally, believing that she had no choice and accepting the officers' assertion that they did not need a warrant, Ms. Lara allowed them to enter the residence. *Id*. Before officers entered the room in which the 9mm gun was found, Ms. Lara told the officers that that the room belonged to her husband, and that the two were separated, though living in the same house. *Id*. The gun was found in a vest hanging in the closet of Ms. Lara's husband's room.

At the time of the incident, Mr. Lara was on probation for violating California Health and Safety Code sections 11378 and 11379(a). Following a contested revocation hearing held on April 10, 2013, Mr. Lara was sentenced to serve two years in state custody, with credit for 386 days already served.

On May 30, 2013, a grand jury returned an indictment charging Mr. Lara with violating 18 U.S.C. 922(g)(1)—felon in possession of a firearm and ammunition. On September 24, 2013, Mr. Lara filed a motion to suppress evidence obtained from the illegal search of his cell phone.

On Septembe4 24, 2013, Mr. Lara filed a motion to suppress evidence derived from the illegal search of his cell phone. (Docket No. 27.)  On October 7, 2013, Mr. Lara filed a second motion to suppress evidence derived from the illegal search of his mother's residence. (Docket No. 30). On October 11, 2013, the government filed its response in opposition to both

1  motions. (Docket No. 32.) This reply to the government's opposition brief follows.

**ARGUMENT**

**I. ALL EVIDENCE OBTAINED AS A RESULT OF THE WARRANTLESS SEARCH OF MR. LARA'S CELL PHONE MUST BE SUPPRESSED BECAUSE NO EXCEPTION TO THE WARRANT REQUIREMENT APPLIED**

In his first motion to suppress evidence, Mr. Lara demonstrated that the probation officer's search of his cellular phone (1) exceeded the scope of consent he had given to such searches as a condition of probation, and (2) that even though he was on probation at the time, he had a reasonable expectation of privacy in the text messages, photographs, and GPS data contained on his cell phone and that reasonable expectation was violated by the government when it conducted the warrantless search of the phone.

In response, the government argues that the search was within the scope because Mr. Lara's "Advisement and Waiver of Rights" at the time of his guilty plea entailed a complete and unlimited waiver of all his fourth amendment rights, and that he made no objection to the search when it was conducted. *See* Gov.'s Opposition at 8-11. Further, the government argues that even if the search exceeded the scope of his consent, the search was justified because the government's interests outweighed the Mr. Lara's privacy interests. *Id*. at 11-18. As set forth below, neither position has merit.

**A. Mr. Lara Did Not Waive Any And All Fourth Amendment Rights As A Condition Of Probation.**

The government's first argument, based on the advisement form, can be dismissed out of hand, because it does not rely on the probation condition that was ordered by the California Superior court that sentenced Mr. Lara. The document on which the government relies, Government's Exhibit 1 at 6, addresses "*possible* penalites." (Emphasis added.) This document includes the following language: "I understand under the Fourth and Fourteenth

Amendments to the United States Constitution, I have a right to be free from unreasonable searches and seizures. I waive and give up this right . . . ." *Id*.; Gov.'s Opposition at 3. But the very same document includes the *actual* terms and conditions imposed upon Mr. Lara: "Submit your person and property including any residence, premises, container, or vehicle under your control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer with or without a warrant, probable cause or reasonable suspicion." *See* Gov.'s Exhibit 1 at 10. This is thus the term that appears in the court's minutes. *See* Lara Conditions of Probation, attached to defendant's first motion to suppress as Exhibit A.

Nor would it make any sense that Mr. Lara had waived every Fourth Amendment privacy interest as a condition of probation. As set forth in detail in defendant's first motion to suppress evidence, California courts do not and cannot impose limitless search waivers, but must craft them so that they are within constitutional limits. *See* Def.'s First Mot. to Suppress at 6-7; *see, e.g.*, *People v. Olguin*, 45 Cal.4th 375, 379, (Cal. 2008). The government's argument is thus without merit.

### B. Contrary To The Government's Position, A Search Of Digital Media Such As A Cell Phone Is Not Within The Scope Of A Standard Search Waiver Condition.

The government points to one, unpublished district court case, *United States v. Diaz*, 2006 WL 3193770, at *2, 4 (N.D. Cal. 2006), for its position that cell phones fall within the scope of the standard search condition. The *Diaz* court's order is a cursory treatment of a motion to suppress the fruits of a cell phone search which contains no information on the specific nature of the search condition and no analysis of the case law that defendant has presented here in his motion to suppress. Moreover, *Diaz* found the search of the cell phone in that case was proper as a booking search, because it was analogous to looking in an "address book," since police merely copied down some of the names and numbers in the phone. *Id*. Clearly, then, *Diaz* is inapposite. It doesn't deal with the complex issues presented by the

search of a device containing far more than a digital address book, and fails to consider the critical issue of the scope of the actual search condition itself. In any event, the holding is entirely at odds with the extensive California case law cited by defendant showing that standard search conditions are *not* presumed to include digital media. See Def.'s First Mot. to Suppress at 6-7, citing *People v. Lopez*, 2011 WL 1167118 at *5 (Cal. Ct. App. 2011, unpublished).; *People v. Garcia*, 2011 WL 141121 (Cal. Ct. App. 2011, unpublished); *People v. Realmuto*, 2010 WL 3221963, at *5 (Cal Ct. App. 2010, unpublished); *In re Stevens*, 119 Cal.App.4th 1228, 1231 (Cal. Ct. App. 2004); *In re Victor L.*, 182 Cal.App.4th 902, 923-927 (Cal. Ct. App. 2010); *In re Hudson*, 143 Cal.App.4th 1, 11 (Cal. Ct. App. 2006); see also *People v. Lord*, 2009 WL 2244172 at *1 (Cal. Ct. App. 2009, unpublished); *People v. Ramirez*, 2009 WL 2197070 at *1 (Cal Ct. App. 2009, unpublished). Thus, the government's argument to the contrary has no merit.

Finally, the government argues that Mr. Lara's failure to object at the time of the search of his phone suggests that he understood the search condition to include all contents of the phone. See Gov.'s Opposition at 11. This argument tries to extend the authority in *United States v. Cannon, 29 F.3d 472*, 477 (9th Cir. 1994). There, appellant failed to object to a search that moved from the cab of his car to the trunk. *Id*. The Ninth Circuit held that the district court's finding—that appellant's failure to object implied consent to search the trunk—was not clearly erroneous. *Id*. The instant case is obviously a far cry from *Cannon*. Here, the search took place months after the purported consent, and the scope of the condition could not be altered once it had been imposed by the sentencing court. Moreover, after the probation officers entered Mr. Lara's residence, they ordered him to sit down and began searching without any attempt to obtain his consent, confident that they were entitled to do search without it. *See* Fix Declaration, attached to Gov.'s Opposition, at paras. 7-9. Mr. Lara's acquiescence in this assertion of apparent authority is not valid consent. *See United States v. Perez–Lopez*, 348 F.3d 839, 846 (9th Cir. 2003).

//

**C. Mr. Lara's reasonable expectation of privacy in his cell phone exceeds the government's asserted interest in law enforcement and the search was therefore a violation of Mr. Lara's Fourth Amendment rights.**

The government argues that even if the search of the cell phone was not within the scope of Mr. Lara's search condition, balancing the government's interests against those of Mr. Lara renders the search reasonable under the Fourth Amendment. Gov.'s Opposition at 11-18; *see United States v. King*, 711 F.3d 986, 989-990 (9th Cir. 2013) (reasonableness of search must weigh "on the one hand, the degree to which [the search] intrudes upon [Defendant's] privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.").

Here, Plaintiff's position amounts to little more than the bare assertion that because Mr. Lara has a diminished privacy expectation as a probationer, the government's interest in ensuring that he is not committing a crime renders the search reasonable. But this argument altogether ignores the Supreme Court's well-established holdings that probationers do enjoy Fourth Amendment protection, and that such protection even exceeds that accorded parolees. *See Samson v. California*, 547 U.S. 843, 850 fn 2; ; *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987). As set forth in Mr. Lara's first motion to suppress evidence (at pp. 12-14), a search of a modern cell phone is particularly intrusive. *See also City of Ontario v. Quon*, __ U.S. __ 130 S. Ct. 2619, 2630 (2010) ("Cell phone and text message communications are so pervasive that some persons may consider them to be essential means or necessary instruments for self-expression, even self-identification.") Indeed, here, the search not only produced communications and photographs, it produced GPS data about where Mr. Lara had been with his phone. This kind of information is about as private as information can be. The government cites no authority for the proposition that probationers do not enjoy or expect the right to communicate electronically and move about without information on their locations and such communications being subject to search on the probation department's whim.

The government's position that "digital devices are entitled to no greater or lesser Fourth Amendment protection than other personal effects" is without support. *See* Gov.'s Opposition at 16. It cites the unpublished case *United States v. Blood*, 429 F. App'x 670, 671

8
**Defendant's Reply to Gov.'s Opposition to Motions to Suppress Evidence**

1  (9th Cir. 2011) for this proposition. This is a misreading of the case. *Blood* identified
2  computers has having *at minimum* the same protection afforded by the Fourth Amendment as
3  other containers, and therefore it is the government's burden is to justify the warrantless search
4  of computers. *Id*. This is a floor, not a ceiling. In any case, the degree of constitutional
5  protection is not a function of the effect to be searched but its owner's reasonable expectation
6  of privacy in that effect. *See Katz v. United States*, 389 U.S. 347, 351 (1967) (the Fourth
7  Amendment protects "people, not places").

8       Against Mr. Lara's reasonable expectation of privacy in his electronic media, the
9  government asserts an interest in "discovering criminal activity and preventing the destruction
10 of evidence", in "apprehending violators of the criminal law", and in his "successful
11 completion of probation" – much the same things. *See* Gov.'s Opposition at 16-18. This
12 justification is insufficient. If it were enough, the Fourth Amendment rights of probationers
13 would not exist and anything at all could be searched or seized without suspicion. We know
14 this isn't the case because the Supreme Court has held time and again that probationer's have
15 Fourth Amendment privacy rights and indeed that those rights are greater even than the rights
16 enjoyed by parolees. *See Samson*, *supra*, 547 U.S. at 850 fn 2; *Griffin*, *supra*, 483 U.S. at 875.
17 If the government does not believe that a probationer's movements and most intimate personal
18 information is not protected, all protection is a fiction. Moreover, that it is "standard protocol"
19 for a probation officer to search a probationer's cell phone (*see* Fix Declaration, attached to
20 Gov.'s Opposition at para. 9) means only that they are routinely violating the search conditions
21 of the individuals they supervise, not that this behavior is reasonable.

22      Finally, the government raises the possible remote wiping of the phone as a justification
23 for the search. *See* Gov.'s Opposition at 17-18. This concern is particularly misplaced in the
24 instant case, where the defendant was detained and taken into custody while the phone was
25 transported to the Orange County forensic lab. *See* Fix Dec. at para. 12. He had no opportunity
26 to wipe the phone and the abstract possibility that he had some confederate available to do so
27 cannot be sufficient justification. Again, the government proposes a rule according to which
28

9
**Defendant's Reply to Gov.'s Opposition to Motions to Suppress Evidence**

*all* cell phones are subject to warrantless search and seizure because of the threat of remote wiping. This is plainly untenable of the Fourth Amendment is to have any meaning at all.

For the reasons set forth in defendant's first motion to suppress evidence, and herein, the government has not met its burden to establish that the search was valid, and all fruits of that search must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

## II. ALL EVIDENCE OBTAINED AS A RESULT OF THE WARRANTLESS SEARCH OF ROSA LARA'S RESIDENCE MUST BE SUPPRESSED BECAUSE THE OFFICERS LACKED PROBABLE CAUSE TO BELIEVE MR. LARA WAS RESIDING THERE AND ROSA LARA DID NOT GIVE VALID CONSENT TO THE SEARCH.

In his second motion to suppress evidence, Mr. Lara argued that the government illegally searched his mother's residence, after finding GPS data on Mr. Lara's cell phone indicating photographs of the gun had been taken at his mother's home. This is so because (1) the probation officers did not have probable cause to believe Mr. Lara resided at his mother's house and therefore no right to search the house pursuant to the probation search condition, (2) they refused Ms. Rosa Lara's request for a warrant, and her acquiescence to the officers' claim that they did not need a warrant was not valid consent to search the home. In response, the government argues (1) that Mr. Lara does not have standing to challenge the search, (2) the officers obtained consent without claiming they did not need a warrant, and (3) the officers had probable cause to believe Mr. Lara resided at his mother's home and therefore had the right to search it. As detailed below, these argument fail to meet the government's burden in this case.

### A. **Mr. Lara Has Standing To Challenge The Search Under Established Ninth Circuit Precedent**.

As set forth in Mr. Lara's Second Motion to Suppress, he has standing to challenge the search of his mother's residence because he has a privacy interest in the location and the items that he keeps there. Def.'s Second Motion to Suppress Evidence at 7-8; *See United States v.*

1  *Grandberry*, --- F.3d ----, 2013 WL 5184439 at *5 (9th Cir. 2013); *United States v. Howard*,
2  447 F. 3d 1257, 1261 (9th Cir. 2006) (probationer has standing to challenge illegal search of
3  another individual's residence if he has a reasonable expectation of privacy in that residence,
4  even if he is subject to a warrantless search condition for his own residence.) Mr. Lara has
5  established that he has a privacy interest in his mother's home, because Mr. Lara spent time at
6  the home, was there from time to time to eat, nap, bathe, and spend time with his family. *See*
7  Declaration of Rosa Lara, attached to Def.'s Second Mot. To Suppress as Exhibit C. He had
8  his own set of keys; he kept may things there, including tools, clothing, and camping supplies.
9  *Id*. That he had an expectation of privacy in the residence is thus apparent. Mr. Lara therefore
10 has standing to contest the illegal search of the apartment. The government's position that he
11 does not have standing because he waived such standing as a condition of his probation
12 (Gov.'s Opposition at 19), completely ignores the precedent in *Grandberry* and *Howard*, and
13 should be dismissed.

### B. Ms. Lara Did Not Consent To The Search, But Acquiesced To The Officers' Assertion Of Authority.

As set forth in the Declaration of Rosa Lara (attached to Mr. Lara's Second Motion to Suppress, as Exhibit B), the officers who arrived at her residence to search it, insisted that they did not need a warrant. *Id*. at paras. 3-10. Ms. Lara repeatedly asked to see one and they continued to refuse. *Id*. Finally, Ms. Lara agreed that they could enter and search because the officers would not leave and insisted they had a right to search the house. *Id*. at paras. 9-10. This consent to search was thus involuntary, since "the government's burden to show voluntariness 'cannot be discharged by showing no more than acquiescence to a claim of lawful authority.'" *United States v. Perez–Lopez*, 348 F.3d 839, 846 (9th Cir. 2003), *citing Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968); Def.'s Second Mot. To Suppress at 9.

The assertions of Officer Fix and Ortiz that they did not believe they had a right to search the premises directly contradict the declaration of Ms. Lara. As regards the declaration

of Fix, this has no value since the interaction with Ms. Lara was in Spanish and only Ortiz was speaking to Ms. Lara. As to the statements of Ortiz, the Court should hold an evidentiary hearing on the matter. *See* Federal Rule of Criminal Procedure 12; *United States v. Prieto-Villa*, 910 F.2d 601, 606-610 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" *id.* at 609-10 (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

### C. Officers Did Not Have Probable Cause To Believe Mr. Lara Resided At The Residence And Therefore Had No Right To Search It.

In their declarations, Fix and Ortiz state that that they did not believe they had any right to search the residence and that they would have left had they not received consent to do so from Ms. Lara. *See* Fix Dec. at para. 17; Ortiz Dec. at para. 5. This is consistent with the argument, set forth in Mr. Lara's Second Motion to Suppress, that they did not have probable cause to believe the residence belonged to Mr. Lara and therefore no right to search it pursuant to his search condition. See Def. Second Mot. To Suppress at 5-6; *Granberry*, *supra*, --- F.3d ----, 2013 WL 5184439 at *13 (probable cause to believe that a residence is that of the probationer is required before the probation search may take place.) Indeed, the probation officers knew very well Mr. Lara did not live there, since they were the same probation officers who had previously searched what they *knew* to be Mr. Lara's current residence: "On October 3, 2012, at approximately 0610, I conducted an unannounced home call with Deputy Probation Officer Joseph Ortiz at the residence of probationer Paulo Lara: 1100 S. Magnolia, #16 in the city of Fullerton." *See* Probation Report, attached hereto as Exhibit A.

Apparently the government doesn't agree with its own witnesses, and argues that in fact they *did* have probable cause to believe the residence belonged to Mr. Lara—and therefore the right to search it pursuant to the search condition. *See* Gov.'s Opposition at 23. But the position that the officers "had reason to believe that the defendant lived in two residences" has no support in the facts. *Id.* The government argues: "(1) Ms. Lara 'identified drawers in the

1 hallway leading into the bedroom as containing [defendant's] clothing and property' (Ortiz
2 Decl. ¶ 7); and that (2) the linens in the bedroom matched pictures on a cell phone that
3 belonged to defendant (id. ¶ 6). Both facts bolstered the officers' probable cause." *Id*. This
4 argument fails on its face. Officers cannot "bolster probable cause" *after* they have begun the
5 illegal search. Probable cause must be established *before* searching, or the rule would have no
6 meaning. *Granberry*, 2013 WL 5184439 at *13. Not even the officers themselves believed Mr.
7 Lara resided at his mother's house. The government doesn't really believe this either.

## CONCLUSION

For the reasons set forth in Defendant's First and Second Motions to Suppress and herein, the fruits of the search of Mr. Lara's cell phone, and of the residence of Ms. Rosa Lara, should be suppressed.

Respectfully submitted.

DATED: October 17, 2013            ___/s/_____
                                   STEVEN A. BRODY
                                   Attorney for Defendant

# PROOF OF SERVICE

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

Case No.: **13-cr-00392-BRO**

I am over the age of 18 and am not a party to this action; my business address is 350 S. Figueroa St., Suite 975 Los Angeles, CA 90071.

As of the date of this filing, I served the foregoing document via the Court's electronic filing service on the following interested parties:

UNITED STATES ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA

CLERK OF THE HONORABLE BEVERLY R. O'CONNELL

/s/
STEVEN A. BRODY